953 F.2d 520
 69 A.F.T.R.2d 92-468, 92-1 USTC P 50,206
 Richard J. MARAZITI, Plaintiff-Appellee,
v.
FIRST INTERSTATE BANK OF CALIFORNIA, a California
corporation; T.P. Ferrand, individually and as a managing
agent and officer of First Interstate Bank; City of San
Diego, a California municipal corporation; Oscar M.
Vasquez, individually and as a police officer for the City
of San Diego (Badge 3628); Michael Nichochea, individually
and as a police officer for the City of San Diego (Badge
1929); United States of America; David Simmons, Mr.; Mark
Van Epps; Gene Carlson; Robert T. Thorpe, Defendants,
and
James Thibault; Janice L. Platt, Defendants-Appellants.
 No. 90-56001.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 14, 1991.
Decided Jan. 3, 1992.
 
 Sally J. Schornstheimer, Dept. of Justice, Washington, D.C., for defendants-appellants.
 Robert L. Zajac, Hillyer & Irwin, San Diego, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before WALLACE, Chief Judge, GOODWIN and ALARCON, Circuit Judges.
 WALLACE, Chief Judge:
 
 
 1
 Thibault and Platt, agents of the Internal Revenue Service (IRS), appeal from an order of the district court denying their motion for summary judgment on grounds of qualified immunity. The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We reverse.
 
 
 2
 * Maraziti and Thorpe agreed to exchange a parcel of real property for cash. Maraziti proceeded to secure $500,000 in cashier's checks, payable to Thorpe, from First Interstate Bank (bank). Meanwhile, Thorpe contacted the IRS and informed certain agents, including Thibault and Platt (agents), that he had not paid income taxes for the years 1984 and 1985. Thorpe told the agents of the cash transaction that was to take place with Maraziti, the amount of money involved, and his desire to pay off his tax debt at that time. He also informed the agents that he was extremely fearful of Maraziti. The agents conducted a limited investigation and background check on Maraziti. Meanwhile, Thorpe filed tax returns for 1984 and 1985. The agents subsequently performed a prompt assessment of Thorpe's tax liability, including penalties and interest.
 
 
 3
 On December 17, 1986, Maraziti and Thorpe took the checks to the bank. Maraziti was unaware of the agents' presence in a back room or their intention to collect Thorpe's tax liability. Maraziti presented the checks to an employee of the bank for the sole purpose of verifying their authenticity. Thorpe and Maraziti were then intentionally separated at the direction of agent Platt. The bank employee took the checks from Maraziti and brought them to Thorpe, who endorsed and cashed them. Thorpe gave the agents $353,323.76, kept the remainder and left the bank, accompanied by the agents. Upon Thorpe's departure, Maraziti was detained and searched for a weapon by San Diego police officers, allegedly at the request of bank officials and the agents.
 
 
 4
 Maraziti never received any property in exchange for the checks. He brought suit against the bank and its manager, the City of San Diego and two of its police officers, the United States, and others. Relying in part on Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Bivens), Maraziti also sued the agents, seeking compensatory and punitive damages. Maraziti contends that the agents' actions violated his fourth, fifth, and fourteenth amendment rights. The agents asserted a qualified immunity defense under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (Harlow), arguing that Maraziti's allegations did not state a violation of any "clearly established" constitutional right. The district court stayed discovery pending the agents' motion for summary judgment. The district court subsequently entered an order denying the agents' motion on the Bivens claim. The agents moved for reconsideration, which was also denied.
 
 II
 
 5
 A federal official's assertion of qualified immunity based upon the plaintiff's failure to state a "violation of clearly established law" is a question of law. Mitchell v. Forsyth, 472 U.S. 511, 528 n. 9, 105 S.Ct. 2806, 2816 n. 9, 86 L.Ed.2d 411 (1985). Notwithstanding the absence of a final judgment, the denial of a qualified immunity defense is appealable under the collateral order doctrine. Id. at 530, 105 S.Ct. at 2817. We review the denial of qualified immunity de novo (independently). Baker v. Racansky, 887 F.2d 183, 185 (9th Cir.1989) (Baker).
 
 
 6
 A public official is entitled to immunity when his or her conduct is objectively reasonable as measured by reference to law clearly established at the time of the incident in question. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. The agents contend that the district court erred by failing to place the burden of proving that the law was "clearly established" on Maraziti. In Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984) (Davis), the Supreme Court held that "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." See Baker, 887 F.2d at 186; Bothke v. Fluor Engineers & Constructors, Inc., 739 F.2d 484, 484 (9th Cir.1984). If this burden is met by plaintiff, the defendant then bears the burden of establishing that his actions were reasonable, even though they might have violated the plaintiff's constitutional rights. Benigni v. City of Hemet, 879 F.2d 473, 480 (9th Cir.1988).
 
 
 7
 The written order of the district court does not outline the burden of proof on the qualified immunity issue. However, in her oral ruling, the district judge observed that she could not "make a finding that clearly established law was violated because [Maraziti] has not presented a sufficient argument in order for [her] to do so." Nevertheless, the district judge embarked on an analysis of whether clearly established law was violated and concluded that it was "entirely possible that the violation of IRS regulations in this case ... did violate clearly established law." The district court then went on to discuss the remaining question of whether the agents' conduct was reasonable and stated that "neither side has made [a] sufficiently strong showing and thus there remains an open question of material fact as to whether the agents acted in an objectively reasonable manner." The district judge therefore concluded that summary judgment was inappropriate.
 
 
 8
 The agents argue that the district court erred by denying summary judgment, and that Maraziti's failure to meet his initial burden to show a clearly established right mandates judgment for the agents. See Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 645-46 (10th Cir.1988).
 
 III
 
 9
 Maraziti has attempted to satisfy his burden of demonstrating a clearly established right at the time of the agents' actions by: (1) making factual arguments that his fourth and fifth amendment rights were violated; (2) citing case law from other circuits to support a fifth amendment takings clause violation; and (3) alleging violations of IRS regulations. We address each of these contentions.
 
 A.
 
 10
 Maraziti makes numerous factual allegations describing the purported violations of his constitutional rights. He points to the decision of agent Thibault, head of the fraud division, to issue a prompt assessment, rather than a jeopardy assessment, of liability against Thorpe. The primary basis of Maraziti's allegation that Thibault violated his fourth and fifth amendment rights is that Thibault did not exercise his supervisory authority to investigate the matter and to prevent other agents from collecting Thorpe's taxes. Maraziti cites no cases, and we have found none, in support of his argument that an agent's failure to investigate a taxpayer's story, which results in the taxpayer using a third party's funds to pay his own tax liability, violates the fourth or fifth amendment rights of the third party. We hold, therefore, that Maraziti has failed to show any such constitutional protection under these circumstances.
 
 
 11
 Maraziti next argues that agent Platt, as a Criminal Investigation Division agent, violated his constitutional rights when she conducted a background search on Maraziti and when she separated Maraziti and Thorpe at the bank. Platt responds that her actions were based on statements by bank officials that "Maraziti's prior conduct and statements had been erratic and irrational." Maraziti alleges that his separation from Thorpe, instigated by Platt, led to the loss of his money, and that Platt's actions violated his right not to be denied property without due process of law.
 
 
 12
 Maraziti presents no case law establishing a constitutional violation in this situation. Instead, he contends that "[c]learly, the IRS agents cannot argue that the United States Constitution is not a well known constitutional development." Generalized allegations of constitutional violations, however, are insufficient to rebut an official's assertion of a qualified immunity defense. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640, 107 S.Ct. at 3039. Maraziti's general due process claim fails to meet this standard.
 
 
 13
 Maraziti also argues that his fourth amendment rights were violated when the police searched him for a weapon. The complaint alleges that this search was conducted at the request of the agents. The agents contend that it was the bank representative who called the police and that they had no contact with the police. Maraziti's allegation, unsupported by an affidavit, cannot withstand a motion for summary judgment. DiMartini v. Ferrin, 889 F.2d 922, 926-27 (9th Cir.1989), amended, 906 F.2d 465 (9th Cir.1990) (while facts in affidavits must be accepted as true, "[g]eneral allegations or denials in the complaint or pleadings are not sufficient to withstand summary judgment"), cert. denied, --- U.S. ----, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). As Maraziti had the burden to prove the issue, it was incumbent upon him to provide the necessary evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This he failed to do.
 
 
 14
 Maraziti next alleges that the agents seized his money in violation of the fourth amendment. The agents contend that the payment by Thorpe was voluntary. However, even if the payment was a seizure, neither Thibault nor Platt conducted it, and the seizure would have been from Thorpe, not Maraziti. In addition, when the government seizes property to collect delinquent taxes, there is no violation of the fourth amendment if the seizure is not an invasion of the taxpayer's personal effects or premises. Hutchinson v. United States, 677 F.2d 1322, 1328 (9th Cir.1982). This rule would apply here. Thus, there was no unconstitutional seizure. Maraziti has not established a violation of the fourth amendment, clearly established or not.
 
 B.
 
 15
 Maraziti argues that the agents' actions violated his rights under the fifth amendment takings clause. The agents contend that a takings claim can only be asserted against the United States because, by definition, it is an authorized governmental taking of private property for public use without just compensation. In addition, the agents contend that there can be no constitutional violation when a plaintiff has not sought compensation in the claims court pursuant to the Tucker Act, 28 U.S.C. § 1491. See F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1316-17 (9th Cir.1989).
 
 
 16
 Maraziti argues that he is not pursuing a takings claim against the United States, but rather he is pursuing a claim that his property was taken as a result of the tortious acts of the agents. He denies that the Tucker Act provides an adequate remedy in these circumstances because the claims court does not have jurisdiction to hear tort claims. In addition, he claims that any tort remedy from the government would be insufficient because it would not include the $147,000 taken by Thorpe. In either case, Maraziti fails to provide any legal support for his argument that a Bivens suit may be brought for a takings claim against IRS agents for accepting payment of delinquent taxes with funds claimed by a third party.
 
 
 17
 It is true that "[s]pecific binding precedent is not required to show that a right is clearly established for qualified immunity purposes." Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). In Ward v. County of San Diego, 791 F.2d 1329, 1332 (9th Cir.1986), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987), we stated that "in the absence of binding precedent, a court should look at all available decisional law including decisions of state courts, other circuits, and district courts to determine whether the right was clearly established." Maraziti cites two cases from other circuits leaving open the possibility that a Bivens action may proceed against IRS agents for violation of fourth and fifth amendment rights. He contends that because there is preexisting case law allowing a Bivens action against IRS agents, his action against the agents should be allowed to go forward.
 
 
 18
 The cases cited by Maraziti involve different constitutional claims, and do not demonstrate that the agents in this case would have been aware that they were violating Maraziti's rights. See Rutherford v. United States, 702 F.2d 580, 584-85 (5th Cir.1983) (possibility of Bivens action where taxpayers alleged that IRS agent maliciously harassed them into paying taxes that were not due); Cameron v. IRS, 773 F.2d 126, 128 (7th Cir.1985) (recognizing potential for Bivens action against IRS agents for violation of fourth and fifth amendment rights, but declining to find such a violation in that case). The mere fact that other courts have stated that IRS agents can be sued does not cure the generalized nature of Maraziti's constitutional claims in this case. Thus, these cases do not support Maraziti's assertion that a clearly established constitutional violation was established.
 
 C.
 
 19
 Maraziti next argues that his constitutional rights were violated because the agents did not comply with IRS regulations. He submits two declarations from former IRS agents, Hairgrove and Dunlap, stating that the agents violated regulations dealing with prompt assessment of Thorpe's tax liability. However, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Davis, 468 U.S. at 194, 104 S.Ct. at 3019. In this case, the prompt assessment was against Thorpe, who requested that it be performed, not against Maraziti. Maraziti has provided no support for the argument that an invalid tax assessment against a taxpayer creates constitutional rights in a third party.
 
 
 20
 The Hairgrove declaration also indicates that the agents' actions resulted in an improper lien under 26 U.S.C. § 6321. Section 6321 provides that if a person neglects or refuses to pay any tax after demand, the United States can place a lien on all property owned by the taxpayer. 26 U.S.C. § 6321. Both parties agree that Thorpe did not refuse to pay, but, rather, handed the money over to the agents. But even if the payment did constitute an unlawful lien, Maraziti has a statutory remedy that precludes action against individual officers of the government. See 26 U.S.C. § 7426(a), (d) (civil action for unlawful levy may be brought by a third party against the United States, but not against individual officers). The argument of Maraziti goes no farther. There has been no demonstration of a constitutional violation.
 
 
 21
 In his declaration, former agent Dunlap contends that the agents violated proper investigation procedures because they allegedly did not follow federal requirements for conducting criminal and civil investigations. He points to agent Platt's involvement in the separation of Maraziti from Thorpe as an example of this violation. These regulations, however, do not serve as the basis of Maraziti's claim as required by Davis. 468 U.S. at 194 & n. 12, 104 S.Ct. at 3019 & n. 12. Because Maraziti fails to establish a sufficient connection between the alleged violation of IRS regulations and his constitutional rights, he has not shown a violation of a clearly established constitutional right.
 
 IV
 
 22
 Maraziti attempts to blame any failure on his behalf to meet his burden of proof upon the limited discovery obtained in the district court. Maraziti moved to compel discovery. A magistrate judge denied his motion and granted the agents' countermotion for a protective order pending resolution of the qualified immunity issue. The district court rejected Maraziti's objection to the ruling, relying on Harlow, 457 U.S. at 817-18, 102 S.Ct. at 2737-38. We review "[a] district court's rulings concerning discovery ... for an abuse of discretion." Hatch v. Reliance Insurance Co., 758 F.2d 409, 416 (9th Cir.1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).
 
 
 23
 The Supreme Court has recognized that qualified immunity represents immunity not only from liability, but also from the burdens and expense of litigation. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738 ("Until th[e] threshold immunity question is resolved, discovery should not be allowed."). The Court has recognized that some limited discovery may be appropriate, in the discretion of the district court, prior to a decision on a summary judgment motion based on qualified immunity. Anderson, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6. However, if the actions alleged by the plaintiff "are actions that a reasonable officer could have believed lawful ... then [the officer] is entitled to dismissal prior to discovery." Id. (emphasis added).
 
 
 24
 Because Maraziti has failed to show a "clearly established" violation of his constitutional rights, which is an issue of law, there was no reason to allow discovery on ancillary factual issues. Thus, there could have been no prejudice to Maraziti due to the district court's order staying discovery pending resolution of the agents' qualified immunity defense. Clearly, then, there was no abuse of discretion.
 
 
 25
 REVERSED.