54 F.3d 1447
 100 Ed. Law Rep. 568
 Jane DOE, a minor, By and Through her Guardian ad Litem,
John DOE, Plaintiff-Appellee,
v.
PETALUMA CITY SCHOOL DISTRICT; Petaluma Joint Union High
School District; Richard Homrighouse,
Defendants-Appellants.
 No. 94-15917.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1994.
Decided May 12, 1995.
 
 Larry J. Frierson and Scott N. Kivel, Liebert, Cassidy & Frierson, San Francisco, CA, Robert J. Henry, School & College Legal Services, Santa Rosa, CA, for defendants-appellants.
 Maria Blanco, Equal Rights Advocates, San Francisco, CA and Julie Goldscheid, NOW Legal Defense & Educ. Fund, New York City, for plaintiff-appellee.
 Charles W. Matheis, Jr., Beam, Brobeck & West, Santa Ana, CA, for amicus curiae, California School Boards Ass'n Educ. Legal Alliance.
 Appeal from the United States District Court for the Northern District of California.
 Before: WALLACE, Chief Judge, PREGERSON and BEEZER, Circuit Judges.
 Opinion by Chief Judge WALLACE; Dissent by Judge PREGERSON.
 WALLACE, Chief Judge:
 
 
 1
 Homrighouse appeals from a district court order denying him qualified immunity. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291. Mendocino Environmental Ctr. v. Mendocino County, 14 F.3d 457, 460 (9th Cir.1994) (denial of qualified immunity appealable on refusal to grant motion to dismiss). We reverse.I
 
 
 2
 Beginning in September 1990, Doe reported to Homrighouse, her school counselor, that she was being harassed by some of her male and female peers. The harassment took the form of sexual comments and lewd writings about Doe on the restroom walls. Homrighouse states that he summoned female students in groups to his office to discuss the unacceptable behavior, and advised Doe about how to work out the problems. Doe alleges that Homrighouse also told her that "boys will be boys" and never told Doe's parents or Doe that the school had a Title IX policy or a Title IX officer, who was responsible for enforcement. It is not contended that Homrighouse sexually harassed Doe. Rather, it is Homrighouse's inaction that Doe argues violated her rights under Title IX and thereby gives rise to a cause of action under 42 U.S.C. Sec. 1983.
 
 
 3
 In February 1992, Doe's mother withdrew her from the school. In January 1993, Doe initiated a Title IX and section 1983 action against both Petaluma City School District and Homrighouse, alleging that the harassment resulted in physical injury, mental health problems, and emotional distress. After partial dismissal, Doe v. Petaluma City School District, 830 F.Supp. 1560 (N.D.Cal.1993), Doe filed a second amended complaint, asserting a Title IX claim against the School only, and a section 1983 claim against Homrighouse only. The School and Homrighouse moved to dismiss the complaint. See Fed.R.Civ.P. 12(b)(6). The district court entered an order holding that the School could be held liable under Title IX, Homrighouse could not be sued as an individual under Title IX but could be sued for Title IX violations through section 1983, and that Homrighouse was not entitled to qualified immunity. Homrighouse appeals from the order denying qualified immunity. He also asks us to exercise what he terms "pendent appellate jurisdiction" and resolve the question of whether he can be sued for a Title IX violation under section 1983, since Title IX seems to create liability on the part of institutions only.
 
 II
 
 4
 We first turn to Homrighouse's request that we resolve whether he can be sued for a Title IX violation using section 1983. Homrighouse argues that Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), provides us the authority to do so.
 
 
 5
 The Court in Siegert "granted certiorari in order to clarify the analytical structure under which a claim of qualified immunity should be addressed," id. at 231, 111 S.Ct. at 1793 (citation omitted), and held that the Court of Appeals for the District of Columbia should "not have assumed, without deciding" whether the right allegedly violated was clearly established. Id. at 232, 111 S.Ct. at 1793. This does not help Homrighouse. Nor have we indicated any interest in broadening our scope of review when evaluating a qualified immunity claim. "On review of a denial of qualified immunity, '[w]e have jurisdiction only to decide if defendant's conduct violated ... clearly established [law].' " Pelletier v. Federal Home Loan Bank, 968 F.2d 865, 871 (9th Cir.1992), quoting Todd v. United States, 849 F.2d 365, 368 (9th Cir.1988). As the Fifth Circuit has said: "We are not free ... to shape the boundaries of our jurisdiction through a general equitable balancing of policy factors." McKee v. City of Rockwall, 877 F.2d 409, 412 (5th Cir.1989), cert. denied, 493 U.S. 1023, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990); see also Swint v. Chambers County Comm'n, --- U.S. ----, ----, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995) (no "pendent party" appellate jurisdiction on appeal from denial of summary judgment on grounds of qualified immunity). We therefore do not reach this argument.
 
 III
 
 6
 A district court's denial of qualified immunity is reviewed de novo. ActUp!/ Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). Homrighouse, as a public school official, is eligible to assert a qualified immunity defense. See Wood v. Strickland, 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975) (extending qualified immunity defense to school board members for liability under section 1983). Because qualified immunity is an affirmative defense from suit, not merely from liability, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).
 
 
 7
 The standard for determining qualified immunity is objective. "If the law at [the time of the official's actions] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 8
 It is Doe's burden to show that the law was clearly established at the time of Homrighouse's inaction. "If this burden is met by plaintiff, the defendant then bears the burden of establishing that his actions were reasonable, even though they might have violated the plaintiff's [federally protected rights]." Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir.1992) (Maraziti ).
 
 
 9
 To demonstrate that it was clearly established law at the time of Homrighouse's inaction that a Title IX claim could be stated for failure to prevent peer sexual harassment, Doe "must show that the particular facts of [her] case support a claim of clearly established right." Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir.1985) (emphasis in original). This does not mean that the "exact factual situation" of Doe's case must have been previously litigated. Alexander v. Perrill, 916 F.2d 1392, 1397 (9th Cir.1990) (Perrill ). "[S]pecific binding precedent is not required to show that a right is clearly established for qualified immunity purposes." Maraziti, 953 F.2d at 525, quoting Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). Absent binding precedent, "a court should look at all available decisional law including decisions of state courts, other circuits, and district courts to determine whether the right was clearly established." Id., quoting Ward v. County of San Diego, 791 F.2d 1329, 1332 (9th Cir.1986), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). Nevertheless, "[t]he contours of the [clearly established] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Thorsted v. Kelly, 858 F.2d 571, 574 (9th Cir.1988), quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In this appeal, it is important to bear in mind that it is the right that is alleged to have been violated that must be clearly established. Davis v. Scherer, 468 U.S. 183, 194 & n. 12, 104 S.Ct. 3012, 3019 & n. 12, 82 L.Ed.2d 139 (1984) (Davis ).
 
 A.
 
 10
 Doe alleges that Homrighouse had a duty to act under Title IX to prevent peer sexual harassment. She does not allege that Homrighouse sexually harassed her, or that he intended that she be harassed. The claim is that he exhibited what Doe calls "intentional indifference" to her right not to be harassed by fellow students. "We have previously held that under Sec. 1983 the qualified immunity defense is inapplicable whenever an official does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the [rights] deprivation." Perrill, 916 F.2d at 1396 (emphasis in original) (internal quotations omitted).
 
 
 11
 To bring this appeal into focus, it is important to identify what is not before us. The question we must decide is not whether Doe had a clearly established right not to be harassed by fellow students. Rather, we must decide whether it was clearly established under Title IX that Homrighouse had a legal duty to do something about the peer harassment.
 
 
 12
 At the time of Doe's harassment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2, prohibited sex-based harassment in the employment context. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). But this is not a Title VII case. Title IX of the 1972 Education Amendments deals with the prohibition of sex discrimination against students and employees of educational institutions. See 20 U.S.C. Secs. 1681-1688. Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Id. Sec. 1681(a).
 
 
 13
 In 1979, the Supreme Court held that Title IX was enforceable by an individual through an implied private right of action. See Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In 1992, the Supreme Court ruled that private plaintiffs could seek monetary damages against a school under Title IX for intentional discrimination against a student by a teacher. See Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).
 
 
 14
 Because Homrighouse's alleged inaction occurred from the fall of 1990 to February 1992, we must examine the state of Title IX law as it existed between the rulings of Cannon and Franklin. In doing so, we conclude that it was not clearly established, at the time of Homrighouse's alleged inaction, that he had a duty to prevent peer sexual harassment. No case prior to February 1992 has been cited to us which demonstrates that Doe had a clearly established right to have Homrighouse intervene on her behalf. In fact, this case appears to be the first in which a student has sought money damages for peer harassment from either a school or school official. No case has been cited to us holding that a school counselor has any duty to prevent Doe's peer sexual harassment, except for the district court's opinion in this case. But another district judge has subsequently refused to follow it. See Aurelia D. v. Monroe County Bd. of Educ., 862 F.Supp. 363, 367 (M.D.Ga.1994) (holding "no basis" for claim under Title IX for a school's inaction in face of complaints of student-to-student harassment, and dismissing claim against individual defendants on the basis of qualified immunity).
 
 
 15
 Thus, the outcome of this case is clear. We must focus on the right Doe alleges was violated. Davis, 468 U.S. at 194 & n. 12, 104 S.Ct. at 3019 & n. 12. That right is that pursuant to Title IX, Homrighouse was required to prevent harassment by Doe's peers. As of February 1992, there was no such clearly established right. It is only when we disobey Davis and refuse to focus on the right Doe alleges was violated that contention may arise.[1]
 
 B.
 
 16
 We have held that the right to be free of sexual abuse in the workplace under Title VII was clearly established during the period of Doe's harassment. See Bator v. Hawaii, 39 F.3d 1021, 1027-29 (9th Cir.1994). But that, of course, is not a Title IX school case. In Doe v. Taylor Independent School District, 15 F.3d 443 (5th Cir.) (en banc), cert. denied, --- U.S. ----, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994), the Fifth Circuit concluded that as of 1987, a school principal and superintendent had a duty to prevent teacher-to-minor student sexual molestation. Id. at 455. But Taylor is different from the situation here. Not only did Taylor involve a teacher who abused a student, but Taylor involved a section 1983 claim brought to vindicate the plaintiff's rights under the Fourteenth Amendment, not under Title IX. The abuse in Taylor was physical, giving rise to a substantive due process claim for the violation of the right to bodily integrity. That difference is crucial, because the contours of an individual's substantive due process right to bodily integrity were much clearer in 1987 than the Title IX right allegedly violated in this case. Again, Doe must show that the right Homrighouse is alleged to have violated was clearly established. Davis, 468 U.S. at 194 & n. 12, 104 S.Ct. at 3019 & n. 12.
 
 
 17
 Doe's claim is also not supported by Clyde K. v. Puyallup School District, 35 F.3d 1396 (9th Cir.1994), where we held that a school did not violate the Individuals with Disabilities Education Act, 20 U.S.C. Secs. 1400-1484a, by removing a student with Tourette's Syndrome from the classroom. We did make reference to Ryan K.'s sexually-explicit remarks, and said in dictum that "public officials have an especially compelling duty not to tolerate [such remarks] in the classrooms and hallways of our schools." Id. at 1401. The opinion, however, was filed two years after the relevant conduct in the appeal before us.
 
 
 18
 Doe points to a letter from the Office for Civil Rights (OCR) that had allegedly notified the school district that, according to OCR's interpretation of Title IX, the school district had a duty to prevent the kind of peer harassment that occurred against Doe. However, an opinion letter by the OCR does not clearly establish that Title IX created a duty on the part of Homrighouse to act.
 
 
 19
 In discussing how a plaintiff may overcome a claim of qualified immunity, the Supreme Court has stated that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Davis, 468 U.S. at 194, 104 S.Ct. at 3019. For the same reason, "officials sued for violations of rights conferred by a statute or regulation ... do not forfeit their immunity by violating some other statute or regulation. Rather, these officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages." Id. at 194 n. 12, 104 S.Ct. at 3019 & n. 12 (emphasis in original). The objective reasonableness of an official's actions is measured by reference to clearly established law. No other "circumstances" are relevant. Id. at 191, 104 S.Ct. at 3017.
 
 
 20
 In Elder v. Holloway, --- U.S. ----, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994), the Supreme Court explained that even though the clearly established right must arise from the same law upon which the claim for relief is based, a court may look to any case law to determine if such a right exists. Id. at ----, 114 S.Ct. at 1023. A reviewing court "should therefore use its 'full knowledge of its own [and other relevant] precedents.' " Id. (emphasis added), quoting Davis, 468 U.S. at 192 n. 9, 104 S.Ct. at 3018 n. 9.
 
 
 21
 The OCR letter in this case neither creates the source of the right sued upon by Doe, nor is it a relevant "precedent" which can clearly establish an official's duty to act. It is true that an obligation to act might arise from something other than decisional law, such as a regulation or policy that an official is legally bound to follow. See Perrill, 916 F.2d at 1398 (prison official's duties clearly established through Bureau of Prisons regulations). But no such regulations exist here that are legally binding on Homrighouse. An opinion letter by the OCR is simply not enough.
 
 C.
 
 22
 If Homrighouse engaged in the same conduct today, he might not be entitled to qualified immunity. We would then be required to consider the Supreme Court's recent Franklin decision. It might be that today a Title VII analogy likening Homrighouse to an employer and Doe to an employee might provide an argument to consider in a similar Title IX case. However, those arguments are not properly before us. With what is properly before us, we cannot say that Homrighouse's duty to act under Title IX was clearly established at the time of his inaction. See Davis, 468 U.S. at 194-95, 104 S.Ct. at 3019-20. It might turn out that Title VII cases decided subsequently to the events in this case could be used by analogy to provide the basis for creating a duty to act under Title IX. We express no opinion as to that question. What we do conclude, however, is that it is not reasonable to charge Homrighouse at the time in question with the kind of knowledge, foresight, or even ingenuity required to anticipate that Title VII analogies might be used in this fashion to hold him individually liable to Doe under Title IX. "The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages." Id. at 195, 104 S.Ct. at 3019.
 
 
 23
 REVERSED.
 
 PREGERSON, Circuit Judge, dissenting:
 
 24
 The majority opinion concludes that Homrighouse, a school counselor, is entitled to qualified immunity because when he failed to stop students from sexually harassing Jane Doe, Title IX did not clearly establish a school official's duty to stop peer-to-peer sexual harassment. In reaching this conclusion, the majority opinion states: "[N]o case has been cited ... holding that a school counselor has any duty to prevent Doe's peer sexual harassment...."[1] By requiring strict factual similarity between pre-existing case law and the present case, the majority improperly dismisses case law that clearly indicated a school official's duty to stop peer-to-peer sexual harassment. Accordingly, I respectfully dissent.
 
 
 25
 The majority opinion does acknowledge that "specific binding precedent is not required to show that a right is clearly established for qualified immunity purposes." Yet, in summarily brushing aside relevant case law that clearly established a school official's duty to stop teachers from sexually harassing their students, and an employer's duty to stop employees from sexually harassing their co-workers, the majority opinion in effect conditions the denial of qualified immunity on the existence of a case that factually is on all-fours with the action in question.
 
 
 26
 In Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Supreme Court pointed out that the right the official is alleged to have violated must have been "clearly established" in a "particularized" sense. The Court cautioned, however, that "this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id.
 
 
 27
 We made clear in Wood v. Ostrander, 879 F.2d 583, 593 (9th Cir.1989), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990), that "the qualified immunity regime of clearly established law should not be held to allow Sec. 1983 defendants to interpose lawyerly distinctions that defy common sense in order to distinguish away clearly established law." See also Backlund v. Barnhart, 778 F.2d 1386, 1390 (9th Cir.1985) ("Certainly ... [Sec. 1983 plaintiffs] need not always produce binding precedent.... There may be cases of conduct so egregious that any reasonable person would have recognized a constitutional violation.").
 
 
 28
 Thus, the fact that in 1990, no court had yet held a school official liable for failing to stop student-to-student sexual harassment should not automatically immunize Homrighouse from suit. In Bator v. State of Hawaii, 39 F.3d 1021, 1027-28 (9th Cir.1994), we held that supervisors who failed to stop the plaintiff's co-workers from sexually harassing her were not entitled to qualified immunity. We concluded that the constitutional and statutory right to be free from sexual harassment, including harassment perpetrated by one's peers, was clearly established in 1988, even though we did not explicitly hold employers liable for the harassment perpetrated by a victim's co-worker until 1991, in Ellison v. Brady, 924 F.2d 872 (9th Cir.1991).
 
 A. PRE-EXISTING CASE LAW
 
 29
 Applying the same analysis we employed in Bator to the instant case, I believe that the unlawfulness of student-to-student sexual harassment would have been apparent to a reasonable school official. To determine whether a right is "clearly established," we must start with binding precedent from our court and from the Supreme Court. Kirkpatrick v. City of Los Angeles, 803 F.2d 485, 490 (9th Cir.1986). In the absence of binding precedent, we must look to decisions of other courts, assessing in the process the likelihood that our court or the Supreme Court would adopt the analysis of the other courts. Id.
 
 
 30
 In 1990, when Jane Doe first complained to Homrighouse about the incidents of sexual harassment, several cases were on the books which clearly indicated a student's right to be free from peer-to-peer sexual harassment under the due process and equal protection clauses of the Fourteenth Amendment, and under Title IX of the Education Amendments of 1972, 20 U.S.C. Sec. 1681-1688.
 
 
 31
 First, courts had established the duty of school officials to prevent teachers from sexually harassing students. After the Supreme Court's ruling in Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), that an implied private right of action existed under Title IX, courts have recognized the existence of a cause of action under Title IX and the Fourteenth Amendment for quid pro quo[2] and hostile environment sexual harassment.
 
 
 32
 In Alexander v. Yale, 459 F.Supp. 1, 4 (D.Conn.1977), aff'd, 631 F.2d 178 (2d Cir.1980), the Second Circuit affirmed the district court's ruling that professors who link a student's academic advancement to submission to sexual pressures violate laws against sex discrimination in education. In Moire v. Temple University School of Medicine, 613 F.Supp. 1360, 1367 (E.D.Pa.1985), aff'd, 800 F.2d 1136 (3d Cir.1986), the Third Circuit affirmed the district court's ruling that a medical student subjected to a sexually hostile environment created by her professor has an actionable claim under Title IX.
 
 
 33
 Second, courts had also established the right to be free from sexual harassment perpetrated by one's peers in the workplace. As noted above, in Ellison v. Brady, 924 F.2d at 882, we held that an employer must take remedial action "reasonably calculated to end" co-worker harassment. The majority opinion abruptly disposes of all relevant Title VII cases by pointing out, without further discussion, that Title VII and Title IX are different statutes.
 
 
 34
 However, notwithstanding this distinction, courts regularly looked to Title VII cases as guides in interpreting Title IX. For example, in Mabry v. State Bd. of Community Colleges, 813 F.2d 311, 316 n. 6 (10th Cir.), cert. denied, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987), the Tenth Circuit concluded that "because Title VII prohibits the identical conduct prohibited by Title IX, i.e., sex discrimination, ... [Title VII] is the most appropriate analogue when defining Title IX's substantive standards."
 
 
 35
 The Equal Employment Opportunity Commission issued guidelines instructing agencies to "consider Title VII case law and EEOC Guidelines ... in determining whether a recipient of Federal financial assistance [under Title IX] has engaged in an unlawful employment practice." 29 C.F.R. Sec. 1691.4 (1994). The legislative history of Title IX also reflected this approach. The House Report states: "Title VII ... specifically excludes educational institutions from its terms. [Title IX] would remove that exemption and bring those in education under the equal employment provision." 1972 U.S.C.C.A.N. 2462, 2512. Thus, it was well settled in 1990 that the standards for sexual harassment under Title VII apply to employment discrimination claims under Title IX.
 
 
 36
 In Lipsett v. University of Puerto Rico, 864 F.2d 881, 897 (1st Cir.1988), the First Circuit extended the Title VII standard to a mixed employment-educational context. The plaintiff, a medical student, was an employee as well as a student of the residency program. The plaintiff was sexually harassed by her supervisors and fellow students. The court held that the school officials' failure to stop the harassment could amount to deliberate indifference to the student's right to be free from discrimination under Title IX and the equal protection clause.
 
 
 37
 Lipsett is noteworthy not only for its extension of the Title VII definition of sexual harassment to an educational context (albeit one that also was employment-related), but also for its holding that school officials may be liable for failing to stop sexual harassment perpetrated by student-employees' peers. See also Pagano by Pagano v. Massapequa Public Schools, 714 F.Supp. 641, 643 (E.D.N.Y.1989) (school officials' failure to prevent continuing physical and verbal abuse by other students stated a claim under Sec. 1983).
 
 
 38
 In light of the cases discussed above, one can reasonably argue that, at the time of Homrighouse's alleged inaction, the Ninth Circuit or the Supreme Court would likely have followed the First Circuit's extension of Title VII standards to Title IX educational cases. In fact, on February 26, 1992, the Supreme Court decided Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), just two days before Jane Doe's parents, who were frustrated with Homrighouse's continuing inaction, pulled her out of Kenilworth Junior High School. In Franklin, the Supreme Court extended the Title VII sexual harassment standards to Title IX educational cases:
 
 
 39
 Unquestionably, Title IX placed on the ... school the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex." We believe the same rule should apply when a teacher sexually harasses and abuses a student.
 
 
 40
 Id. at 75, 112 S.Ct. at 1037 (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). The Court held that a school may be liable to a student for monetary damages for sexual harassment perpetrated by a teacher. Id.
 
 
 41
 Concededly, Franklin cannot serve as evidence of existing law that indicated the unlawfulness of peer-to-peer sexual harassment because it was decided after Homrighouse's alleged inaction. Nonetheless, Franklin demonstrates that the Supreme Court would have followed existing case law that extended Title VII sexual harassment standards to Title IX educational cases.
 
 
 42
 In short, I believe that a reasonable official would have concluded that the sexual harassment standard we established in Ellison v. Brady, supra, would most likely apply to Title IX educational cases. Just as an employer must take remedial action "reasonably calculated to end" co-worker harassment, 924 F.2d at 882, so too must school officials take remedial action reasonably calculated to end peer harassment.[3]
 
 B. OCR'S LETTER OF FINDING
 
 43
 The conclusion that student-to-student sexual harassment, like co-worker sexual harassment, violates the law should have been particularly apparent to someone like Homrighouse. The Office for Civil Rights of the U.S. Department of Education ("OCR") explicitly notified the Petaluma City School District through a Letter of Finding that the failure to stop the very type of harassment to which Jane was subjected violates Title IX. It is undisputed that Homrighouse received a copy of this letter, read it, and placed it in a file marked "Title IX" in his office.
 
 
 44
 The Letter of Finding, which was dated May 5, 1989, stated that the district was in violation of Title IX for failing to take prompt and effective action to stop the sexual harassment of another student. The other student was verbally harassed by fellow students at Kenilworth Junior High School, who yelled "Moo, Moo" at her and made blunt references to the size of her breasts. Kenilworth is the same junior high school that Jane Doe attended.
 
 
 45
 OCR found that (1) the taunts directed at the other student constituted sexual harassment because (a) they were sexual in nature and (b) they interfered with her ability to benefit from her education and created an intimidating, hostile, and offensive environment;[4] (2) several teachers knew about the harassment; (3) the principal's response, which included verbally reprimanding the students and assigning a custodian to watch for the behavior on one day, was insufficient to address the problem; and (4) a prior victim of sexual harassment at Kenilworth managed to escape the harassment only by transferring out of the school. The Letter of Finding explicitly specified that "[a] district which is aware that its students are being subjected to sexual harassment has a duty under Title IX to take prompt and effective action to stop it."
 
 
 46
 Jane suffered virtually identical harassment. The epithets such as "slut" and "ho" (slang for whore), and the pervasive taunts of her having a "hot dog" in her pants, were clearly of a sexual nature. Jane and her parents informed Homrighouse numerous times that the harassment severely interfered with her education. Yet, despite the OCR notice that the failure to address adequately this type of problem violates Title IX, Homrighouse failed to take the requisite action.
 
 
 47
 Instead, for several months, Homrighouse refused to take any action at all, telling Jane that "boys will be boys" and that "girls cannot sexually harass other girls." After one of many incidents, Homrighouse finally called the offenders into his office and warned them. The warning did not stop the harassment. Homrighouse never reported the incidents to the school's Title IX officer, nor did he ever tell Jane or her parents that the school had a Title IX policy and a Title IX officer who was responsible for enforcing the policy. Homrighouse declared that he did not inform the Title IX officer of the harassment because he "didn't feel it was important."
 
 
 48
 The majority asserts that an opinion letter by OCR "is simply not enough" to bind Homrighouse because it "neither creates the source of the right sued upon by Doe, nor is it a relevant 'precedent.' " The majority does note, though, that an obligation to act might arise from something other than decisional law, such as a regulation or policy that an official is legally bound to follow. See Alexander v. Perrill, 916 F.2d at 1398.
 
 
 49
 Although OCR's Letter of Finding was not legally binding on school officials in general, it specifically bound Kenilworth's officials, including Homrighouse, to its terms. OCR is the entity charged with enforcing and effectuating Title IX. 20 U.S.C. Sec. 1682 authorizes the U.S. Department of Education to investigate reported violations of Title IX and to initiate administrative proceedings to enforce compliance if voluntary compliance cannot be secured. Refusals to comply can be sanctioned with a termination of federal aid. Section 1682 also authorizes the Secretary of the Department of Education to promulgate rules, regulations, or orders of general applicability to effectuate Title IX.
 
 
 50
 A Letter of Finding notifies the institution in question whether it is in violation of applicable civil rights statutes, and outlines remedial steps that must be taken to preserve federal funding of its programs. See Notice of Final Annual Operating Plan for Fiscal Year 1985, Department of Education, Office for Civil Rights, 49 Fed.Reg. 48,599 (December 13, 1984) ("OCR reviews with recipients its findings on each issue raised by a complaint or compliance review and ... the resulting LOF cites the basis for the violation finding and the remedy adopted by the recipient.").
 
 
 51
 Moreover, even though agency interpretations of law do not have the binding force of law, it is well established that "an agency's construction of its own regulations is entitled to substantial deference." Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 150, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991); Lyng v. Payne, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341-42, 90 L.Ed.2d 921 (1986) (same); Cohen v. Brown University, 809 F.Supp. 978, 988 (D.R.I.1992), aff'd, 991 F.2d 888 (1st Cir.1993) ("[OCR's] Policy Interpretation and Investigator's Manual ... do not carry the force of law.... Nevertheless ... [they] are important guides in unraveling the requirements of the athletic regulation [under Title IX].").
 
 
 52
 In Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), the Supreme Court held that absent Congressional intent to the contrary, an agency's interpretation of the statute which it administers will be upheld if it is based on a "permissible construction" of the statute. A court need not conclude that the agency construction was the only one it permissibly could have adopted or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. Id. at 843 n. 11, 104 S.Ct. at 2782 n. 11.
 
 
 53
 Title IX provides, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. Sec. 1681. OCR stated the following conclusion in its May 5, 1989 Letter of Finding to the Petaluma City School District: "Harassment of a student because of his or her sex may have the effect of depriving that student of benefits or of subjecting them to different treatment on the basis of sex." This conclusion clearly constitutes a permissible interpretation of Title IX.
 
 
 54
 Because Homrighouse closed his eyes to the clear indications of case law, and because Homrighouse ignored OCR's requirement that he take adequate steps to stop the sexual harassment suffered by Jane Doe, I submit that he should not enjoy the benefit of qualified immunity. We said in Pelletier v. Federal Home Loan Bank, 968 F.2d 865, 870 (9th Cir.1992), "[t]he doctrine [of qualified immunity] was created to protect good faith exercises of official discretion, not to shield willful or knowing lawless action taken under color of official authority."
 
 
 
 [1]
 It is therefore beside the point whether, as the dissent argues, Doe had a right to be free from peer-to-peer sexual harassment. The question before us is whether Homrighouse had a duty to act to prevent such harassment, not whether the harassment itself was permitted under Title IX
 
 
 [1]
 Although the majority opinion only decided whether a school official's duty to stop peer sexual harassment was clearly established under Title IX, Jane Doe claims that that duty arises under Title IX and the Fourteenth Amendment. See Second Amended Complaint at 13-14; District Court's Order at 7-8
 
 
 [2]
 Quid pro quo sexual harassment is where the harasser demands sexual favors from the victim in exchange for a benefit
 
 
 [3]
 Ellison also contained broad language on the scope of an employer's duty to alleviate a hostile work environment created by one's peers. The decision should have alerted any reasonable official of the imperative to act upon similar kinds of complaints, such as student-to-student harassment: "[T]he reasonable victim standard we adopt today classifies conduct as unlawful sexual harassment even when harassers do not realize that their conduct creates a hostile working environment." 924 F.2d at 880 (emphasis added). "Employers should impose sufficient penalties to assure a workplace free from sexual harassment.... In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harassers to refrain from the unlawful conduct." Id. at 882
 
 
 [4]
 The letter noted that harassment which is directed at a student because of his or her sex also constitutes sexual harassment