**Carol WASSUM, Plaintiff–Appellant,**

v.

**The CITY OF BELLAIRE, TEXAS, et al., Defendants–Appellees.**

No. 87–6058.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1988.

Joel Androphy, Berg & Androphy, Houston, Tex., for plaintiff-appellant.

Firmin A. Hickey, Jr., Karla Kay Garrett, Richard A. Sheehy, Cook, Davis & McFall, Houston, Tex., for defendants-appellees.

Before GOLDBERG, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Carol Wassum, a police dispatcher for the City of Bellaire was brutally raped by a

---

fellow police officer, John Casey. The district court entered a default judgment against Casey on Wassum's section 1983 suit but dismissed the city, its mayor and police chief on summary judgment; Wassum appeals this summary judgment. We find no error and affirm.

## I.

Carol Wassum was working as a police dispatcher for the Bellaire Police Department on March 31, 1984. She began work at 7:00 a.m. and her shift was to end at 3:00 p.m. With the exception of police officers occasionally checking into the station, Wassum was alone in the building. Wassum was behind a locked door and controlled access to the dispatcher's office. At about 2:30 p.m., Wassum allowed Officer John Casey to enter the dispatcher's office. Casey was not on duty, but was scheduled to go on duty with the next shift. After entering the office, Casey sexually assaulted Wassum.

Casey had been hired by the Bellaire Police Department in November 1981. Before hiring him, the department interviewed supervisors at two Houston-area police departments where Casey had worked from 1978 to 1981. Casey's application showed he was self-employed as a California private investigator from 1975 to 1978. Bellaire did not verify this information. Bellaire conducted state and National Crime Information Center (NCIC) computer searches which showed Casey had no criminal record. Additionally, Bellaire submitted Casey's fingerprints to state authorities and the FBI for criminal background checks; sent confidential questionnaires to all persons listed as references; did NCIC checks on all of Casey's references; interviewed his former wife; conducted a financial check; confirmed his educational background, including a B.S. degree in criminal justice from San Diego State University; and required Casey to be certified as emo-

tionally and psychologically fit by a licensed physician.

Bellaire did not verify Casey's employment before 1978. Wassum produced evidence that such a check would have revealed that in 1975 Casey was detained in California for indecent exposure and resigned from the Costa Mesa Police Department when he refused to take a polygraph test about the incident. This incident, and Casey's resignation from the Costa Mesa force, were discovered by Bellaire police detectives during the criminal investigation of the assault of Wassum.[1]

In this section 1983 action, Wassum sued Casey, the City of Bellaire, its Police Chief and Mayor. Wassum alleged that the City inadequately screened applicants for its police force and that this policy amounted to gross negligence, deliberate indifference or reckless disregard of Wassum's constitutional rights. Wassum alleged that the hiring practices were deficient for three reasons: (1) failing to verify Casey's employment background before 1978; (2) failure to conduct a polygraph examination of Casey prior to hiring him; and (3) failing to have Casey undergo a more extensive psychological/psychiatric examination.

The district court entered summary judgment in favor of all defendants except Casey.[2] The court concluded that although the city, its mayor and police chief were arguably negligent in their pre-employment screening of Casey, they did not act with gross negligence or deliberate indifference. Wassum contends summary judgment was improper because the summary judgment record raised material fact issues as to whether the hiring practices followed by defendants were grossly negligent or deliberately indifferent to the welfare of its citizens.

## II.

No one questions the district court's determination that Casey violated Wassum's

---

1. Casey was convicted of aggravated sexual assault of Wassum and sentenced to ten years in the Texas Department of Corrections.

2. The district court entered a default judgment in favor of Wassum against Casey in the amount of $1,000,000 in actual damages and $3,000,000 in punitive damages. No appeal was taken from that judgment.

constitutional rights when he brutally raped her. The sole question presented by this appeal is whether the district court correctly exonerated the City, its Police Chief and Mayor of liability to Wassum under section 1983.

A municipality has no respondeat superior liability under section 1983 for the conduct of its employees. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 692–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611, 636–38 (1978). In the typical section 1983 action against a city, the plaintiff alleges: "(1) a policy (2) of the city's policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of a constitutional right." *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir.1985).

When the plaintiff establishes a policy of a city that is itself unconstitutional, the plaintiff's proof that the policy was applied to him is sufficient to support a section 1983 judgment against the city. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791, 803 (1985). But Wassum does not present such a case to us. She seeks to impose liability on the city and its officers for a policy (or lack of policy) that is not itself unconstitutional—failing to use adequate hiring policies. The Supreme Court has struggled with whether a plaintiff can state a claim against a city in such a case and if so the proof a plaintiff must produce to prevail. We now turn to the closely analogous cases from the Supreme Court and this court for guidance in analyzing Wassum's claim.

In *City of Oklahoma City v. Tuttle*, the survivors of a victim who was fatally shot by a police officer sought to recover from the defendant city under section 1983 on the ground that the city inadequately trained its police officers. In a plurality opinion, Justice Rehnquist questioned whether such a "policy" that is not itself unconstitutional could ever serve as the predicate for the city's section 1983 liability: "the word 'policy' generally implies a course of action chosen from among various alternatives; it is therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training'". *Tuttle*, 471 U.S. at 824, 105 S.Ct. at 2436, 85 L.Ed.2d at 804. Although Justice Rehnquist did not determine that inadequate training of police officers could never be a policy under section 1983, the plurality opinion ends with the suggested test that "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.*[3]

In *Languirand v. Hayden*, 717 F.2d 220 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984), we considered a case where a city policeman, through grossly negligent conduct, shot and injured the plaintiff. The plaintiff sought to impose liability against the city on grounds that the city failed to properly train its police officers. After a thorough analysis of the authorities, we concluded:

> [I]f there is a cause of action under section 1983 for failure to properly train a police officer ... such failure to train must constitute gross negligence amounting to conscious indifference, and a municipality is not liable ... in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force.

*Id.* at 227–28.

In *Stokes v. Bullins*, 844 F.2d 269 (5th Cir.1988), the plaintiff was shot by a police officer and sought to impose liability against the town on grounds that it failed to establish adequate hiring policies for its

**3.** The Supreme Court has not offered meaningful guidance on whether a municipal policy must be unconstitutional before a city may be held liable under section 1983. *See City of St. Louis v. Praprotnik*, —— U.S. ——, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion); *id.* at 936 (Brennan, J. concurring); *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 107 S.Ct. 1114, 1116, 1121–22, 94 L.Ed.2d 293 (O'Connor, J., dissenting).

police officers. The town hired the officer knowing that he had been arrested a few times in nearby towns for various minor offenses. *Id.* at 270–71. The town did only a cursory background investigation of the officer. A National Crime Information Center (NCIC) computer search would have revealed that the officer had been arrested approximately fifteen times for offenses ranging from simple assault to armed robbery. *Id.* at 271.

The district court concluded that the town's failure to conduct a more complete investigation of Bullins' background constituted gross negligence and conscious indifference to the public welfare and would support a judgment against the city. This court disagreed and held that the evidence, as a matter of law, did not establish deliberate indifference or gross negligence. We noted that *"if* a section 1983 claim may arise from egregious hiring practices ... we would ... require a plaintiff to establish actual knowledge of the seriously deficient character of an applicant or a persistent, widespread pattern of the hiring of policemen, for instance, with a background of unjustified violence." *Id.* at 275 n. 9.

We now apply these principles to the instant case in determining whether the district court erred in entering summary judgment in favor of Bellaire, its mayor and police chief.

### III.

Summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c).

Appellant does not contend that the city's policy authorized the assault of appellant. Rather, appellant argues that the city's inadequate hiring policy—not itself unconstitutional—led the city to employ Casey which in turn caused appellant's damages.

We agree with the district court that even if a city's hiring practices could serve as the predicate for liability against a city for the criminal acts of a police officer, *see Tuttle,* a plaintiff must demonstrate that those hiring practices that led it to employ the police officer constituted gross negligence amounting to conscious indifference to the welfare of the public. *See Languirand,* 717 F.2d 220; *Stokes,* 844 F.2d 269.

The summary judgment evidence fails to establish the city's gross negligence or conscious indifference to the safety of its citizens. To the contrary, the uncontradicted evidence reflects that in 1981 it was the policy of Bellaire to generally follow the recommended hiring guidelines of the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE). In accordance with these guidelines, Bellaire interviewed supervisors at two previous police departments that employed Casey; conducted national (NCIC) and state criminal record computer checks; submitted Casey's fingerprints to state and federal authorities; interviewed Casey's former wife and several references; and required Casey to be certified as physically and psychologically fit by a licensed physician.

The evidence does show that Bellaire verified Casey's employment record for only the previous five years instead of to the age of sixteen as suggested by the TCLEOSE guidelines. Bellaire's failure to check Casey's employment record for more than five years amounts to no more than simple negligence. Failure to follow this recommended screening guideline does not render the city consciously indifferent to the safety of its citizens.

The summary judgment record contains no evidence that Bellaire closed its eyes to the background of police officer applicants it hired. Bellaire's check of Casey, while not exhaustive, was quite extensive and generally in compliance with the TCLEOSE recommendations. To hold Bellaire liable here would "march municipal liability too far down a path toward liability based on simple negligence" and undermine the rejection of respondeat superior liability. *Stokes,* 844 F.2d at 274–75.

Additionally, the summary judgment record is bare of evidence that Bellaire had actual knowledge of Casey's 1975 sexual

misconduct and appellant does not suggest such knowledge. Finally, there is no evidence that other dangerous or assaultive policemen were hired by Bellaire and certainly no evidence to suggest a widespread pattern of hiring such policemen.

In addition to appellant's primary contention that Bellaire was grossly negligent in failing to investigate Casey's work record from the date of his application back to his sixteenth birthday, she makes two additional arguments: Bellaire was grossly negligent (1) in failing to require Casey to take a pre-employment polygraph examination and (2) for failing to have Casey undergo a more extensive psychological examination.

As to appellant's contention that the failure to give a polygraph exam constituted gross negligence, we agree with the district court that:

> While polygraph tests are used with greater frequency today, there is still some question of their efficacy. Some states have prohibited the practice of requiring submission to a polygraph test as a pre-condition of employment.

The failure of a city to administer a polygraph test to screen an applicant for a police officer position does not constitute gross negligence.

Bellaire arranged for an examination of Casey with a physician with training in psychology in compliance with the applicable recommended guidelines. Bellaire's failure to obtain a more complete examination certainly does not constitute gross negligence.

Because the district court correctly granted summary judgment, its judgment is

AFFIRMED.