**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 94-50709

JOHN DOE, as Next Friend of
Jane Doe, a Child,

                                        Plaintiff-Appellee,


                      versus

HILLSBORO INDEPENDENT SCHOOL
DISTRICT, ET AL.,

                                        Defendants,

LARRY ZABCIK, ET AL.,

                                        Defendants-Appellants.


Appeal from the United States District Court
for the Western District of Texas


April 23, 1996


Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges:

WIENER, Circuit Judge:

    After his daughter was assaulted and raped by a Hillsboro
(Texas) Middle School (School) custodian, Plaintiff-Appellee John
Doe (Doe), on behalf of his minor child, Jane Doe (Jane), brought
this suit under 42 U.S.C. § 1983 and Title IX of the Education

Amendments of 1972[1] against Defendants-Appellants Hillsboro Independent School District (District), as well as its board members, its supervisor, and the School's maintenance staff manager, individually. Doe alleged, <u>inter alia</u>, that the District and the individual defendants (School Officials) hired convicted criminals and then failed to supervise them adequately. These acts and omissions, concludes Doe, caused a deprivation of the constitutional rights of his minor daughter, Jane. The School OfficialsSQbut not the DistrictSQfiled a motion[2] seeking dismissal for failure to state a claim and, in connection with the § 1983 claims, based on qualified immunity as well. The district court denied the motion. We dismiss in part; affirm in part; and reverse and remand for further proceedings.

I

FACTS AND PROCEEDINGS

A. INTRODUCTION

Doe filed this lawsuit, as next friend of Jane, asserting § 1983 and Title IX claims against the District,[3] and only § 1983

---

[1] 20 U.S.C. §§ 1681-88.

[2] The District was not a party to this motion and is not a party to this appeal.

[3] Title IX reads in pertinent part, as follows:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).

claims against (1) the District's board members;[4] (2) Billy Sullins, its manager of the Transportation and Maintenance Department (Manager); and (3) Leon Murdoch, its Superintendent (Superintendent). In his First Amended Complaint, Doe alleged facts which, at this early stage in the litigation, we must accept as true.[5]

B.  THE FACTS ALLEGED IN THE COMPLAINT

At the time of the relevant events, Jane was 13 years old and a student at the School. In May 1993 at her teacher's behest, Jane remained after school for additional academic work. Jane perceived that she would benefit from this additional work and felt "compelled to stay after school pursuant to the actual or apparent (and perceived) authority of her instructors." Jane's after-school studies were interrupted by her teacher who asked Jane to go upstairs and retrieve some additional supplies.

During this errand, a male custodian (Custodian) employed by the District, chased Jane into an empty classroom, locked the classroom door, and proceeded to assault and rape her. Jane did not disclose these events to anyone until Christmas, when her parents demanded that she explain her physical condition: Jane, it seems, was pregnant. The family went to the police who arrested

---

[4] The members of the Board include Larry Zabcik, James Maass, Teresa Davis, Carol Beyer, Roy Young, Norman Baker, Richard Sewall.

[5] This appeal involves the review of a denial of a Rule 12(b)(6) motion to dismiss on the basis of qualified immunity. All well-pleaded facts must be accepted as true and viewed in the light most favorable to the plaintiff. Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

3

the Custodian. Shortly after his arrest, the Custodian pleaded guilty to rape.

Even though Texas law requires school districts to investigate the criminal record of each prospective employee,[6] the School Officials did not investigate the criminal histories of any of its prospective employees.[7] In 1993, the school year in question, at least one-third of the School's maintenance staff (Staff) had criminal records. The criminal records of the Staff included convictions for murder, armed robbery, unlawful weapons possession, multiple DWIs, drug offenses, failure to ID a fugitive, and cruelty to animals. The Custodian had a criminal record prior to pleading guilty to raping Jane, although the precise contents of his record were unknown at the time the complaint was drafted and filed.

Additionally, during the 1993 school year, the School Officials received reports that members of the Staff had sexually abused students at the School. These reports included incidents of

---

[6] The Texas Education Code reads, in pertinent part, as follows:

> (a) A school district shall obtain criminal history record information that relates to an applicant to whom an offer of employment is being considered by the district . . . .

Tex. Educ. Code Ann. § 21.917 (West 1987 & 1995 Supp.)

[7] Doe also alleges, in the alternative, that if the Defendants did check the criminal histories of prospective employees, then they were deliberately indifferent in hiring known criminals for the maintenance staff in a middle school. As we review the facts alleged in the complaint in the light most favorable to Doe, we will assume for the purposes of this appeal that the Defendants failed altogether to investigate the criminal histories of prospective employees.

"fondling students, voyeurism, and the like." The School Officials neither verified nor investigated these reports; instead, the Staff was told to "stay away from the little white girls."

In his complaint, Doe contends that both the inadequate hiring procedures and the failure to investigate reports of sexual abuse demonstrate the School Officials' deliberate indifference to Jane's constitutional rights. Doe concludes that, as a direct result of the School Officials' acts and omissions, Jane's constitutional right to bodily integrity was violated: The Custodian, an unsupervised criminal with the keys to the schoolhouse, had raped her.

C.    THE MOTIONS TO DISMISS

The School Officials (but not the District) responded by filing motions, under Rule 12(b)(6), requesting the court to dismiss Jane's Title IX and § 1983 claims. The district court dismissed Doe's initial complaint without prejudice, but suggested that he refile his complaint to allege (if possible) that Jane's assailant had a criminal record. Following the court's suggestion, Doe amended his complaint to contain allegations that the Custodian had a criminal record, albeit the details of that record were not specified.

The School Officials renewed their motions to dismiss all of Doe's claims. The district court denied the renewed motion to dismiss the § 1983 claim, stating that "the Court is persuaded Plaintiff has adequately stated a claim for relief." The court neither commented nor ruled on the Title IX claim. The School

5

Officials timely filed this interlocutory appeal.

II

DISCUSSION

A.  JURISDICTION

Before addressing the pleadings complained of in this appeal, we examine the basis for our jurisdiction.[8]  On appeal, the School Officials challenge two aspects of the district court's order: First, they insist that "this Court must dismiss the Title IX claims . . . ."  In like manner, they contend that the § 1983 claims against them should have been dismissed, based on qualified immunity.  We conclude that we do not have jurisdiction to review any aspect of Jane's Title IX claim; however, we do have jurisdiction to review the "purely legal" aspects of Jane's § 1983 claim to the extent of the pleadings in Doe's complaints.

1.  *Title IX Claim*

The district court does not appear to have ruled on the School Officials' motion to dismiss Jane's Title IX claim against them. The apparent reason for not ruling is that, despite the fact that Doe never asserted a Title IX claim against the School Officials,[9]

---

[8] Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir.1987) ("This Court must examine the basis of its jurisdiction, on its own motion, if necessary.").

[9] Doe has asserted a Title IX claim against the District only. See Franklin v. Gwinnet County Public Schools, 503 U.S. 60 (1992) (holding that Title IX affords the full range of remedies to plaintiff's suing a school system receiving federal funds).  He has not asserted a Title IX claim against the School Officials in their individual capacities.  Although we have yet to address the issue, the district courts in this circuit have held that a Title IX claim may not be asserted against an individual. See Leija v. Cantuillo Indep. Sch. Dist., 887 F.Supp. 947, 953 (W.D. Tex. 1995); Bowers v.

they alone moved to dismiss "the Title IX claim against them."  In response, the district court neither granted nor denied their motion--presumably, it simply ignored the Title IX motion. Believing erroneously that their motion to dismiss the putative Title IX claim against them had been denied, the School Officials appealed to us, insisting that the district court should have granted that motion.  Even though the district court properly ignored his issue, we address it in the interest of clarity.

As a general matter, we do not have interlocutory jurisdiction over denials of motions to dismiss:  Such pretrial orders are not "final decisions" for the purposes of 28 U.S.C. § 1291.[10]  Even if we assume arguendo that the district court's failure to comment on the Title IX claim constituted a denial of the School Officials' motion, we would not have jurisdiction to review such non-final pretrial orders in the Title IX context.

_____

Baylor University, 862 F.Supp 142, 145-46 (W.D. Tex. 1994)(citing Doe By And Through Doe v. Petaluma City Sch. Dist., 830 F.Supp 1560 (N.D.Cal. 1993)); see also Slaughter v. Waubonsee Community College, 1994 WL 663596, at *3 (N.D. Ill. 1994)("[T]he Court concludes that an action for individual liability cannot be brought pursuant to Title IX . . . .); Seamons v. Snow, 1994 WL 560448, at *3 (N.D. Utah 1994)("Although the Supreme Court has found that Title IX provides a damages remedy, that remedy is available only when the suit is brought against an 'education program or activity receiving Federal financial assistance,' not in suits against individuals."(citations omitted)).  Moreover, nothing in Jane's complaint suggests that she is asserting a Title IX violation against the School Officials through § 1983.

[10] See Sorey v. Kellett, 849 F.2d 960, 961 (5th Cir. 1988) ("Under 28 U.S.C. § 1291, the courts of appeals have jurisdiction over 'final decisions' of the district courts.  Ordinarily, this section precludes review of a district court's pretrial orders until appeal from the final judgment.").

Additionally, even if we were to take the next step and assume further that we have interlocutory jurisdiction to review such an order in the Title IX context, we would still lack personal jurisdiction over the relevant party. The only party against whom Jane has asserted a claim under Title IX is the District, but the District is not a party to this appeal. Obviously we cannot dismiss a claim against a party who has not appealed. Thus, we hold that we lack appellate jurisdiction over both the Title IX issue and the District as the relevant party. In so doing, however, we neither express nor imply an opinion on the sufficiency of Doe's Title IX complaint against the District; we simply dismiss the Title IX facet of this appeal for lack of appellate jurisdiction and remand this particular claim for further proceedings.

2. *Section 1983 Claims*

Jane's § 1983 claims are another matter altogether. In Mitchell v. Forsyth,[11] the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."[12] Recently, in Johnson v. Jones,[13] the Supreme

---

[11] 472 U.S. 511 (1985).

[12] Id. at 530; see also Hale v. Townley, 45 F.3d 914, 918 (5th Cir. 1995) ("An appellate court has jurisdiction to review an interlocutory denial of qualified immunity only to the extent that it 'turns on an issue of law.' " (quoting Mitchell, 472 U.S. at 530)).
In Mitchell, the Court held that a district court's order denying a defendant's motion for summary judgment was an

8

Court made clear that our interlocutory jurisdiction under <u>Mitchell</u> begins and ends with the "purely legal" aspects of qualified immunity.[14] In <u>Johnson</u>, the Supreme Court reiterated the dichotomy in the grounds for denying a motion for summary judgment based on qualified immunity: "(a) a determination about pre-existing 'clearly established' law, or (b) a determination about 'genuine' issues of fact for trial."[15] The Court then held that we have jurisdiction over the former, a purely-law-based denial of qualified immunity, but that we have no jurisdiction over the latter, a genuine-issue-of-fact-based denial of qualified immunity.[16]

Unlike <u>Johnson</u>, which was reviewed at the summary judgment-level, the instant case involves the complaint-level denial of a motion to dismiss under Rule 12(b)(6). In the Rule 12(b)(6) context, there can never be a genuine-issue-of-fact-based denial of qualified immunity, as we must assume that the plaintiff's factual

---

immediately appealable collateral order under <u>Cohen v. Beneficial Indus. Loan Corp.</u>, where (1) the defendant was a public official asserting a defense of immunity, and (2) the issue appealed concerned whether or not certain given facts showed a violation of clearly established law. <u>Mitchell</u>, 472 U.S. at 528.

[13] <u>Johnson v. Jones</u>, 115 S.Ct. 2151 (1995).

[14] <u>Id.</u> at 2156 (holding that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order <u>insofar as</u> that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial")(emphasis added).

[15] <u>Id.</u> at 2158.

[16] <u>Id.</u> at 2159.

allegations are true.[17]  Thus, denials of motions to dismiss on the basis of qualified immunity are always "purely legal" denials.[18] Accordingly, under <u>Mitchell</u> and <u>Johnson</u>, we have interlocutory jurisdiction to determine whether Jane has stated a claim under § 1983.  And, if so, whether it is immune to dismissal at this stage on grounds of qualified immunity.

B.    STANDARD OF REVIEW

A district court's ruling on a Rule 12(b)(6) motion is subject to <u>de novo</u> review.[19]  A motion to dismiss requires the court to test the formal sufficiency of the statement of the claim for relief.[20] All well-pleaded facts must be accepted as true and viewed in the light most favorable to the plaintiff.[21]  The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.  Accordingly, we will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

---

[17] <u>See</u> <u>Campbell</u>, 43 F.3d at 975.

[18] <u>Jefferson v. Ysleta Indep Sch. Dst.</u>, 817 F.2d 303, 304 (5th Cir. 1987)(holding that the denial of a Rule 12(b)(6) motion to dismiss based on qualified immunity "poses solely a question of law . . . .").

[19] <u>Cinel v. Connick</u>, 15 F.3d 1338, 1341 (5th Cir.), <u>cert. denied</u>, 115 S.Ct. 189 (1994);  <u>Jackson v. City of Beaumont Police Dept.</u>, 958 F.2d 616, 618 (5th Cir. 1992).

[20] 5A Charles A. Wright & Arthur R. Miller, Federal Practice And Procedure § 1356, at 294 (1990).

[21] <u>Campbell</u>, 43 F.3d at 975.

would entitle him to relief.[22]

C.   ELLIOTT V. PEREZ AND THE HEIGHTENED PLEADING REQUIREMENT

Before turning to the sufficiency of Doe's complaint, we must determine whether any statements therein should be excluded as conclusionary. The School Officials assert that Doe's complaint is "a paragon of poetic license" and fails to satisfy the heightened pleading requirement of Elliott v. Perez.[23] We disagree.

The School Officials speciously "cherry pick" paragraphs from Doe's complaint to quote to us, then assert that the whole complaint is conclusionary. When examined in isolation, the particular paragraphs selectively quoted by the School Officials do appear conclusionary; but when those quoted paragraphs are read in pari materiae with the factual allegations contained in the preceding dozen-plus paragraphs of Doe's complaint, it becomes obvious that the School Officials have self-servingly quoted only parts of the complaint. In short, the quoted paragraphs do not fairly represent the complaint as a whole. We conclude that when Doe's complaint is read in its entirety it is seen to plead Jane's claims with more than enough particularity to meet the requirements set forth in Elliott.

---

[22] Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994).

[23] 751 F.2d 1472 (5th Cir. 1985)(the complaint must "state with factual detail an particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity."). A majority of the Fifth Circuit has held that the heightened pleading of Elliott survived Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993). See Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995)(en banc).

D.   HAS DOE STATED A CLAIM UNDER § 1983?

To state a claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."[24]   The District's arguments to the contrary notwithstanding, only the first prong is at issue in this appeal.[25]   At the Rule 12(b)(6) level our sole question is whether Doe has alleged a violation of a right secured by the Constitution.

E.   JANE'S RIGHT TO BODILY INTEGRITY

In this circuit, "a supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in a physical sexual abuse case," when "the official, by action or inaction, demonstrates a deliberate indifference to [a student's]

---

[24] Leffall, 28 F.3d at 525 (citations omitted); accord Resident Council of Allen Parkway Village v. United States Dep't of Hous. & Urban Dev., 980 F.2d 1043, 1050 (5th Cir.), cert. denied, 114 S.Ct. 75 (1993).

[25] The School Officials insist that the "under color of state law" element is lacking because either (1) the Custodian did not act "under color of state law" or (2) because none of the School Officials actually participated in the rape.  Neither of these contentions has merit.  First, the Custodian, a state employee who was "on the clock" when he raped Doe at the School was a state actor.  Second, the School Officials' hiring policies as well as their supervisory actions and decisions are "under color of state law."  An official's actions do not cease to be under color of state law merely because the official acts beyond the scope of the authority granted by state law.  See United States v. Classic, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is taken 'under color of' state law.").

constitutional rights that results in the molestation of school children."[26] In the complaint, Doe alleges two factually distinct but legally related claims under § 1983: First, Doe contends that the School Officials' inadequate hiring procedures--failing to check criminal histories of prospective Staff employees--led them to hire criminals, one of whom caused Jane's injuries. Second, Doe alleges the School Officials' failure to supervise the custodial staff--ignoring repeated reports that members of the Staff were sexually abusing school children--led to additional sexual abuse, specifically Jane's being raped by the Custodian. We will analyze the elements of each of these types of claims to determine whether, as a formal matter of pleading, Doe has alleged in his complaint facts sufficient to survive a motion to dismiss.

1. *The Hiring Policy: Inadequate?*

To prove that a hiring policy violated her rights under § 1983, Jane must show that (1) the hiring procedures were inadequate; (2) the school officials were deliberately indifferent in adopting the hiring policy; and (3) the inadequate hiring policy directly caused the plaintiff's injury.[27] With the awareness that stating a claim and proving it present substantially different tasks, we hold that Doe has stated a claim that the School Officials' hiring policies and procedures were inadequate and

---

[26] Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994)(en banc), cert. denied, 115 S.Ct. 70 (1995).

[27] Benavides v. County of Wilson, 955 F.2d 968, 972 (5th Cir.) (citing City of Canton v. Harris, 489 U.S. 378 (1989)), cert. denied, 113 S.Ct. 79 (1992).

13

caused a violation of Doe's constitutional rights.

First, Doe's allegations that the School Officials failed to investigate the criminal records of prospective employees satisfies the inadequacy element. Common sense recommendsSQand state law demandsSQthat, in the interest of the safety of school children, school officials investigate the criminal histories of prospective school employees.[28] The School Officials' total abdication of this responsibility constitutes a facially inadequate hiring process.

Second, the hiring inadequacies alleged here reveal a deliberate indifference to Doe's welfare. A hiring process demonstrates "deliberate indifference," when it constitutes such recklessness or gross negligence as to amount to conscious indifference to the plaintiff's constitutional rights.[29] The School Officials cite two cases for the proposition that, at most, their hiring procedures represent merely negligent hiring practices.[30] The School Officials, however, disregard, or at least overlook, the following footnote in one of those cases:

> [I]f a section 1983 claim may arise from egregious hiring
> practices . . . we would . . . require a plaintiff to
> establish actual knowledge of the <u>seriously deficient</u>
> <u>character</u> of an applicant or a <u>persistent, widespread</u>

---

[28] <u>See</u> Tex. Educ. Code Ann. § 21.917.

[29] <u>See</u> <u>Wassum v. City of Bellaire, Tex.</u>, 861 F.2d 453, 456 (5th Cir. 1988).

[30] <u>See</u> <u>Stokes v. Bullins</u>, 844 F.2d 269 (5th Cir. 1988)(questioning prospective police officer on background and checking local criminal record, but not ordering a National Crime Center Information Report, was not deliberate indifference in the hiring process); <u>Wassum</u>, 861 F.2d at 456 (failure to check employment record for more than five years amounted to negligence, not deliberate indifference in the hiring process).

14

<u>pattern</u> of hiring policemen, for instance, with a background of unjustified violence.[31]

Just as the histories of prospective police officers must be scrutinized routinely for violence or unlawful conduct in the interest of the public's safety, the criminal histories of prospective school employees must be scrutinized in the interest of students' safety.

Doe has alleged that one-third of the School's Staff in 1993 were convicted criminals, many of them violent criminals. Surely the District's hiring and giving the schoolhouse keys to even one convicted murderer constitutes the hiring of an applicant with "seriously deficient character." When that is multiplied to the point that a significant fraction of the custodial staffSQhere, one-thirdSQconsists of convicted criminals, "a persistent, widespread pattern" of hiring school employees with a background of crime and violence is manifested. Doe has satisfied the second element of his hiring claim.

Third, a jury could reasonably conclude that when school officials hire a staff, one-third of whom are violent criminals, give those criminals the keys to the schoolhouse, and place them in constant contact with students, there is a "real nexus" ~~nexus~~ between the hiring of these criminals-cum-custodians and the constitutional injuries suffered by victims like Jane.[32] We

---

[31] <u>Stokes</u> 844 F.2d at 275 n.9 (emphasis added); <u>see also</u> <u>Wassum</u>, 861 F.2d at 456 (quoting this passage with approval).

See <u>Doe v. Raines Indep. Sch. Dist.</u>, 66 F.3d 1402, 1407-08 (5th Cir. 1995).

conclude that Doe has alleged a sufficient causal connection between the hiring process and Jane's injuries to defeat a motion to dismiss.

In sum, the egregious nature of the criminal records alleged, and the sheer number of Staff members alleged to have criminal records, move Jane's inadequate hiring claim beyond mere negligence and into the realm of a constitutional tort. Although surviving summary judgment, much less proving these allegations by a preponderance of the evidence, may be a daunting task, we <u>cannot</u> say "that it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief."[33]

2.  *Supervision: Deliberate Indifference?*

To plead a valid failure-to-supervise claim, Doe must allege facts sufficient to present the following elements: (1) the defendants learned of facts or a pattern of inappropriate sexual behavior by subordinates pointing plainly toward the conclusion that the subordinates were sexually abusing the students; (2) the defendants demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously needed to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student.[34] We conclude that Doe has alleged facts that, when accepted as true and

---

[33] <u>Leffall</u>, 28 F.3d at 524.

[34] <u>See</u> <u>Hagan v. Houston Indep. Sch. Dist.</u>, 51 F.3d 48, 51 (5th Cir. 1995)(citing <u>Taylor</u>, 15 F.3d at 454).

viewed in the light most favorable to Doe, satisfy these three elements.

First, Doe alleges that the School Officials received repeated reports that Staff members had sexually abused students. Although these reports do not appear to have identified individual employees or students by name, Doe's allegations that the School Officials responded to these reports with ostrich-like avoidance satisfies the first element. At this early pleading stage, it is unnecessary to produce specific names and exact dates. Doe has alleged that the School Officials received a number of reports plainly pointing to the inescapable conclusion that Staff members were sexually abusing students. These allegations are sufficient to merit at least limited discovery. After limited discovery, however, if the evidence cannot sustain the weight of these allegations, summary judgment presents an effective and efficient tool to terminate the inquiry and the case at a sufficiently early and minimally burdensome stage. Although Doe has not alleged that "X School Official" plainly knew that "Y Staff member" was sexually abusing "Z student," we conclude that allegations that School Officials ignored repeated reports that Staff members sexually abused students are sufficient to survive a motion to dismiss.

On the second "deliberate indifference" element, Doe alleges that the School Officials (1) knew or should have known that one-third of the Staff members had criminal records, (2) received reports that Staff members were sexually abusing students, and (3) did absolutely nothing about it. Such inaction rises to the level

17

of total abdication of the duty to protect school children from sexual abuse by state actors, and, if proved, would demonstrate deliberate indifference to Jane's constitutional rights. Moreover, a jury could reasonably conclude that such deliberate indifference was the proximate cause of Jane's being raped. Accordingly, with respect to Jane's failure-to-supervise claim, we conclude that Doe's complaint sufficiently alleges that the School Officials caused a deprivation of Jane's constitutional rights "under color of state law."

3.   *Other Theories of Liability Only Confuse the Issue*

In the process of stating the above described deficient hiring and failure-to-supervise claims, Doe indiscriminately jumbles into the complaint the language and elements of two other § 1983 theories of liability: (1) the state-created danger doctrine and (2) the DeShaney[35] special-relationship doctrine. As both of these doctrines apply only when a third-party inflicts the harm, both of these theories are legal "dead ends" here.

a.   State-Created Danger Doctrine

Regarding the state-created danger theory, other circuits have held that when a state actor knowingly places a person in danger, the Due Process Clause of the Constitution renders such state actor accountable for the foreseeable injuries that result from his conduct, whether or not the victim was in formal "custody."[36] In

_____

[35] DeShaney v. Winnebego County Dep't of Social Servs., 489 U.S. 189 (1989).

[36] Johnson v. Dallas Indep. Sch. Dist, 38 F.3d 198 (5th Cir. 1994), cert. denied, 115 S.Ct. 1361 (1995).

18

attempting to apply this doctrine to the instant case, we encounter two flaws: First, although at least once in the past we assumed arguendo that such a claim is recognized in this circuit, we have yet to recognize this theory of liability squarely.[37] Second, Jane's case does not arise under one of the factual situations in which other circuits have applied (and we have assumed) this doctrine. Generally, the state-created danger doctrine applies only when the state actor creates the dangerous situation in which a third-party causes the harm.[38] In the instant case the custodian who caused the harm was himself a state actor, not a third party, so even assuming arguendo that the state-created danger theory were recognized in this circuit, Doe's effort to employ the state-created danger doctrine would fail.

b.    Special Relationship Doctrine

In like manner, a special-relationship claim under DeShaney[39]

---

[37] Leffall, 28 F.3d at 530 ("We have found no cases in our circuit permitting § 1983 recovery for a substantive due process violation predicated on a state-created danger theory . . . ."); see also Johnson 38 F.3d 198.
    In Johnson, the court assumed arguendo, that such a cause of action existed to determine whether a student, who was killed by a stray bullet shot by a non-student during a school fight, had stated a claim under § 1983 against the school principal and the school district. Ultimately, the court held that these facts, albeit tragic, are not an example of when "deliberate, callous decisions to interpose a [student] in the midst of a criminally dangerous environment."

[38] Johnson, 38 F.3d at 201 ("[T]he environment must be dangerous; they must know that it is dangerous; and to be liable, they must have used their authority to create an opportunity that would not ave otherwise for the third party's crime to occur.")(emphasis added).

[39] 489 U.S. 189 (1989).

is applicable only to harm inflicted by third parties.  In <u>Leffall</u>, we stated that "[t]he special relationship doctrine is properly invoked in cases involving harms inflicted by <u>third parties</u>, and it is not applicable when it is the conduct of a state actor that has allegedly infringed on a person's constitutional rights."[40]  Again, the Custodian was a state actor; consequently, the special relationship doctrine is unavailable to Doe.

F.   QUALIFIED IMMUNITY

The School Officials assert that even if Doe has stated a claim against them, they can invoke qualified immunity to require the dismissal of Jane's § 1983 claims.  We disagree.  Qualified immunity shields public officials from exposure to extensive discovery, trial, and liability for alleged constitutional torts if their questioned conduct does not violate clearly established law effective at the time of the alleged tort.[41]  The qualified immunity determination requires a two-step analysis: (1) whether the plaintiff has alleged a violation of a constitutional right,[42] and (2) whether the constitutional right allegedly violated was clearly established at the time the events in question occurred.[43]  As the preceding analysis demonstrates that Doe's pleadings are sufficient

---

[40] 28 F.3d at 529.  (emphasis added).

[41] <u>Salas v. Carpenter</u>, 980 F.2d 299, 305 (5th Cir. 1992) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

[42] <u>Id.</u> at 305 (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).

[43] <u>Id.</u> at 305-306 (citing <u>Creighton v. Anderson</u>, 483 U.S. 635, 641 (1987)).

to satisfy the first prong of the qualified immunity analysis, we need only address the second.

At least since 1987, the law has been clearly established that (1) school children do have a liberty interest that is protected by the Due Process Clause of the Fourteenth Amendment and (2) physical sexual abuse by a school employee violates that interest.[44] As the events here in question occurred in 1993, the School Officials cannot avail themselves of the shelter of qualified immunity, at least not at the pleadings stage. Accordingly, we affirm the order of the district court to the extent that it held that Doe has stated an inadequate-hiring claim and a failure-to-supervise claim under § 1983 against the School Officials.

III

THE DISSENT

In closing, we feel constrained to address briefly our colleague's dissent. We begin by noting his candid acknowledgment that the roots of his disaffection run deeper than this case, i.e., that his larger disagreement derives from this court's en banc holding in Taylor.[45] There is little that we can say or do to address this concern; for, as the dissent also acknowledges, Taylor is the law in this circuit and we are bound to follow it, like it

---

[44] Taylor, 15 F.3d at 455 ("The 'contours' of a student's substantive due process right to be free from sexual abuse and violations of her bodily integrity were clearly established in 1987.").

[45] See Dissent, infra at -- n.2. (school children have a constitutional right to bodily integrity and sexual abuse violates a school child's right to bodily integrity).

or not.

Turning to issues that we can address today, we perceive a fundamental error in the dissent's "state action" inquiry when it mistakenly focuses on the rapist (Custodian), rather than on the defendant School Officials who instituted and conducted the process that put Doe in harm's way, in the person of the Custodian. This circuit held as early as 1981 that "[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process."[46] By inquiring whether rape falls within the Custodian's scope of employment, the dissent misperceives the fundamental question that we must address in this appeal: Was the violation of Doe's right to bodily integrity occasioned by state action? In this opinion, we hold nothing more than that Doe has adequately pled that the School Officials (as distinguished from the Custodian, who is not even a defendant in this action) acted under color of state law when, over time and with deliberate indifference, they inadequately hired and indifferently supervised a custodial staff one-third of whom are criminals. We do not, as the dissent suggests by its "parade of horribles," implySQmuch less holdSQthat "every intentional tort committed by a state official or employee could result in a constitutional violation, actionable under § 1983."

In this Rule 12(b)(6) appeal, we examine the pleadingsSQand only the pleadingsSQto determine whether, by (1) ignoring state law that mandates pre-hiring background checks, (2) hiring a custodial

---

[46] Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981).

staff of whom one-third are criminals, and (3) ignoring or suppressing prior reports of sexual molestation and other crimes by members of that staff, the School Officials were deliberately indifferent to Doe's constitutional right to bodily integrity. Then, as the dissent agrees, we determine whether there was a "real nexus" between the activity out of which the violation occurred and the duties and obligations of the School Officials.[47]

We have done precisely that. The relevant activities out of which the violations occurred were the hiring and supervision practices of the School Officials, not the janitorial and maintenance activities of the Custodian. The Officials' duties comprise the hiring and supervision of the District's employees, including the custodial staff. Thus, the correct color-of-law or state-actor inquiry in this case is whether there was a "real nexus" between the School Officials' hiring and supervising practices and the violation of Doe's rights. In other words, were the violations state-occasioned? To focus on whether the Custodian raped Doe in the course of his employment is to follow the proverbial red herring.

It is in the foregoing framework that we respectfully but strongly disagree with the dissent: It is not a "far leap"SQif indeed it is a leap at allSQfrom <u>Taylor</u> to hold that the hiring of a custodial staff rife with criminals, giving them the keys to the schoolhouse, and authorizing them to roam the halls when and where vulnerable students are likely to be encountered, and, despite

---

[47] <u>Raines</u>, 66 F.3d at 1407-08.

prior reports of sexual abuse, to do so in the absence of adequate supervision, obviously does create a "real nexus" between the rape of Doe and the deliberately indifferent performances of the School Officials' duties and obligations.

Certainly, the set of school personnel who are potential state actors is not so narrowly limited, as the dissent would instruct, that it includes only classroom teachers and athletic coaches; rather that set circumscribes the entire spectrum of school employees, and even independent contractors, whom the School Officials through their hiring, contracting, and supervising responsibility, place on a collision course with public school students. We neither hold nor imply the ludicrous conclusion that the course and scope of a school custodian's employment could ever include rape; we do, however, hold that when a school employee is rightfully on the premises, during school hours, ostensibly performing his assigned duties, _and_ predictably finds himself alone with a student, constitutional deprivations perpetrated by that school employee on the person of that student might be found to have occurred in the course of employment.

But, again, that simply is not the pertinent question; rather, the question is whether the School Officials who hired and then failed to supervise the Custodian, thereby creating the circumstances that brought him in contact with Doe, did so under color of state law. At this threshold pleading phase of the case, Doe's allegations are more than sufficient to demonstrate that they did, thereby stating a cause of action sufficient to avoid a

qualified immunity dismissal under Rule 12(b)(6).

IV

CONCLUSION

For the forgoing reasons, the School Officials' interlocutory appeal of the district court's putative refusal to dismiss Jane's Title IX claim is DISMISSED for want of jurisdiction. The district court's order denying the School Officials' motion to dismiss Jane's § 1983 claims, however, is affirmed and those claims are remanded for further proceedings.

DISMISSED, in part; AFFIRMED, in part; and REMANDED.

EMILIO M. GARZA, Circuit Judge, dissenting:

Today we are faced with yet another tragic case involving the sexual assault of a child by a school employee. Despite the horrific nature of this case, I dissent from the majority's holding that the school officials are not entitled to qualified immunity.[48] The question before us is not whether a school janitor should be punished for committing rape))clearly he should. Rather, we are confronted with the question of whether he is a state actor pursuant to *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 451-52 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 70, 130 L. Ed. 2d 25 (1994). The majority argues that it is irrelevant whether the custodian was a state actor when he raped Jane. Instead, the majority concludes that the school officials violated Jane's right to bodily integrity because they "instituted and conducted the

---

[48] I concur in Parts I, II. A., B., and E.3a. and b. of the majority opinion.

-25-

process that put [Jane] in harm's way." The majority's decision creates a new cause of action and an unwarranted expansion of *Doe v. Taylor,* from which I dissent.

Doe alleges that the Hillsboro Independent School District and several school officials are liable under 42 U.S.C. § 1983 for the violation of her right to bodily integrity under a supervisory theory of liability. *Doe v. Taylor* held that "a supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in a physical sexual abuse case," when "the official, by action or inaction, demonstrates a deliberate indifference to [a student's] constitutional rights that results in the molestation of school children." *Id.* at 454. The school officials counter that they are entitled to qualified immunity for their actions. "The defense of qualified immunity protects a public official from liability in the performance of his duties unless he violates a clearly established statutory or constitutional right of another known to or knowable by a reasonable person." *Jefferson v. Ysleta Indep. Sch. Dist.,* 817 F.2d 303, 305 (5th Cir. 1987). Therefore, the first step in analyzing whether a defendant is entitled to qualified immunity, is to determine whether the plaintiff has alleged a constitutional violation. *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1404 (5th Cir. 1995) (citing *Blackwell v. Barton,* 34 F.3d 298, 301 (5th Cir. 1994)).

Before determining whether a supervisory official can be held

liable under § 1983, we must first find that (1) a rights violation occurred (2) under color of state law. *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1407 (5th Cir. 1995). Jane Doe alleges that her Fourteenth Amendment right to bodily integrity was violated. She relies on our decision in *Taylor*, 15 F.3d 443, which stated that "bodily integrity is necessarily violated when a *state actor* sexually abuses a schoolchild." (emphasis added).[49]

Therefore, to state a claim under § 1983 based on a violation

---

Although bound by Fifth Circuit precedent, I note that the Supreme Court has yet to rule on whether the right to bodily integrity includes the right to be free from sexual assault. *See Planned Parenthood v. Casey*, ___ U.S. ___, ___, 112 S. Ct. 2791, 2806, 127 L. Ed. 2d 352 (1994) (citing cases defining the contours of the substantive due process right to bodily integrity). I find this troubling because the Court has stated on several occasions that it "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, ___, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992); *Albright v. Oliver,* ___ U.S. ___, ___, 114 S. Ct. 807, 812, 127 L. Ed. 2d 114 (1994).

I also note that only one other circuit has definitively held that the substantive due process right to bodily integrity includes the right to be free from sexual abuse or rape. *See Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 727 (3d Cir. 1989) ("[A] student's right to bodily integrity, under the Due Process Clause, [encompasses] a student's right to be free from sexual assaults by his or her teachers.), *cert. denied*, 493 U.S. 1044, 110 S. Ct. 840, 107 L. Ed. 2d 835 (1990); *cf. Doe By and Through Doe v. Petaluma City Sch. Dist.,* 54 F.3d 1447, 1451 (9th Cir. 1995) (citing *Taylor,* 15 F.3d 443 with approval but as inapplicable to the case before the court).

Recently, the Sixth Circuit, sitting en banc, commented on our conclusion that the right to bodily integrity includes the right to be free from sexual assault. The court stated:

> All of these civil decisions, rather than pointing to precedent establishing the right, make assertions such as: "surely the Constitution protects a schoolchild from physical abuse . . . by a public schoolteacher," *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 451 (5th Cir. 1994) (en banc); or "the notion that individuals have a fundamental substantive due process right to bodily integrity is beyond debate," *Walton v. Alexander,* 44 F.3d 1297, 1306 (5th Cir. 1995) (Parker, J., concurring). These broad statements are not supported by precedent indicating that a general constitutional right to be free from sexual assault is part of a more abstract general right to "bodily integrity."

*United States v. Lanier,* 1996 WL 21177, *7 (6th Cir. Jan. 23, 1996) (en banc) (concluding that "sexual assaults may not be prosecuted as violations of a constitutional substantive due process right to bodily integrity" under 18 U.S.C. § 242).

-27-

of her Fourteenth Amendment right to bodily integrity, Jane must establish (1) that a state actor (2) sexually abused her (3) under color of state law. However, "in § 1983 suits alleging a violation of the Due Process Clause of the Fourteenth Amendment, we have collapsed the state action and color of state law inquiries into a single" step because the inquires are identical. *Rains,* 66 F.3d at 1406; *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S. Ct. 2744, 2749, 73 L. Ed. 2d 482 (1982) (stating that the "color of state law" requirement under § 1983 and the "state action" requirement of the Fourteenth Amendment are identical). Therefore, Jane will simply have to prove that she was deprived of her protected liberty or property interest, here her right to bodily integrity, under color of state law. *Rains,* 66 F.3d at 1406. This will require us to determine whether the custodian was acting under color of state law when he sexually assaulted Jane. If we find that the custodian did not act under color of state law when he sexually assaulted Jane, then Jane will not have been deprived of a constitutional right, and the school officials cannot be liable as supervisors under § 1983. *See id.* at 1407 ("After finding that (1) a rights violation occurred (2) under color of state law, only then do we ask a third and final question: Who are the state actors responsible for the constitutional violation" other than "the immediate perpetrator?").

The majority fails to adequately address the color of state law requirement, despite its conclusion that Doe has alleged a

violation of a constitutional right.  The majority first states that the "color of state law" requirement is not at issue in this appeal,[50] but nevertheless, concludes that the plaintiff satisfied the "color of state law" requirement under § 1983, because the Custodian was a state employee who was "on the clock" when he raped Jane Doe.  Even more confusing, the majority opines that to focus on whether the Custodian was a state actor is "to follow the proverbial red herring."  Instead, the majority concludes that once we find that the school officials acted under color of state law, then they are liable for violations that were proximately caused by their actions.  This has never been the law of the Fifth Circuit. *See Rains,* 66 F.3d at 1407 (noting that there must be an underlying constitutional violation before a court can consider who besides "the immediate perpetrator" can be held liable under § 1983).

I can perceive of no difference between the majority's analysis and that employed under the state-created danger theory, which the majority specifically rejected in Part E.3.a.[51]  The

---

In making this assertion, the majority relies on the fact that although the district court denied the defendants' motion to dismiss for failure to state a claim and qualified immunity, only the qualified immunity defense is subject to interlocutory appeal. *Jefferson v. Ysleta Independent School Dist.,* 817 F.2d 303, 304 (5th Cir. 1987).  However, the majority's approach ignores the fact that to establish a constitutional violation, Doe must prove state action which is identical to proving "color of state law" under § 1983. *Rains,* 66 F.3d at 1406.

The majority's analysis is also similar to that employed under the special relationship theory of liability.  The special relationship theory imposes on the state "affirmative obligations of care and protection . . . when the state "'takes a person into its custody and holds him there against his will.'" *Johnson,* 38 F.3d at 202 (quoting *DeShaney v. Winnebago County Dept. of Social Serv's.,* 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06, 103 L. Ed. 2d 249 (1989)).  Where a special relationships exists, the state can be liable for harm inflicted by a private party. *See DeShaney,* 489 U.S. at 199-200, 109 S. Ct. at

-29-

state-created danger theory holds state actors liable for the foreseeable injuries that result from their conduct when they "knowingly place a person in danger." *Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198, 200 (5th Cir. 1994). To be liable under this theory, the state actor must create a dangerous environment; "they must know it is dangerous; and . . . they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. Put otherwise, the defendants must have been at least deliberately indifferent to the plight of the plaintiff." *Id.* at 201. The Fifth Circuit has not "yet predicated relief on a state-created danger theory." *Johnson,* 38 F.3d at 201.

In this case, the majority concludes that because the school officials were deliberately indifferent in instituting and conducting the process that "put Doe in harm's way," they are liable for her injuries under § 1983. In reaching this conclusion,

---

1005-06 (citing *Youngberg v. Romeo,* 457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982) as holding that Fourteenth Amendment requires state to use reasonable measures to protect involuntarily committed mental patients from themselves and others). The majority explicitly rejects the special relationship theory in this case, stating that the doctrine only applies in cases where third parties inflict the harm. Since the custodian was a state actor, the majority concludes, the special relationship theory is not applicable in this case. However, as indicated earlier, this conclusion is difficult to reconcile with the majority's assertion in Part III that "In this opinion, we hold nothing more than that Doe has adequately *pled* that the *School Officials (as distinguished from the Custodian, who is not even a defendant in this action) acted under color of state law*." To the extent that the majority opinion does not hold that the custodian was a state actor or acting under color of state law, yet the state is still liable for the harm he inflicted, this is similar to the duty of care and protection required in special relationship cases. However, this is disturbing since neither the Fifth Circuit nor the majority opinion has ever held that a special relationship exists between the state and public school students. *Johnson,* 38 F.3d at 2003; *see also Walton v. Alexander,* 44 F.3d 1297, 1305 (5th Cir. 1995) (en banc) (holding that there is no "special relationship" when a student voluntarily resides at a state school).

the majority focuses on the dangerous environment that the school officials were deliberately indifferent in creating. The majority alleges that the officials created this environment by inadequately hiring and indifferently supervising a custodial staff one-third of whom were criminals, "giving them the keys to the schoolhouse, and authorizing them to roam the halls when and where vulnerable students are likely to be encountered, and despite prior reports of sexual abuse, to do so in the absence of adequate supervision." Given this dangerous environment, the majority concludes that there is "obviously" a "'real nexus' between the rape of Doe and the deliberately indifferent performances of the School Officials' duties and obligations." According to the majority, the school officials, therefore, acted under color of state law and are liable under § 1983 for the harm that Doe suffered regardless of whether the person who raped her was a state actor. The majority, in essence, concludes that the school officials, not the custodian, violated Jane's right to bodily integrity.

This interpretation is a complete abrogation of *Doe v. Taylor*. On the one hand, the majority accepts *Taylor's* bodily integrity theory, but on the other hand, it rejects the premise))that to constitute a constitutional violation, it must be an employee state actor who sexually assaults the student. *Taylor* specifically found that the *Taylor* Doe's right to bodily integrity was violated by a person acting under color of state law. *Taylor,* 15 F.3d at 452 n.4. The court stated that a "real nexus" existed between the

-31-

teacher's duties and obligations as a teacher and the activity out of which the violation occurred. *Id.* It was only after the court established that Doe had suffered a violation of her right to bodily integrity by a person acting under color of state law, the teacher/coach, that the court proceeded to address which, if any, supervisory officials could also be liable to Doe under § 1983. The majority today skips this first step, implicitly creating a new cause of action similar to the state-created danger theory.

I respectfully dissent from the majority opinion on this issue and would hold that because the custodian was not a state actor when he raped Jane, there is no underlying constitutional violation for which to hold the supervisory officials liable under § 1983. Not all unlawful actions taken by state officials are taken under color of law. When acting pursuant to a general grant of authority, a state official acts under "color of state law" either when he acts within that general grant of authority or when he exceeds the general grant of authority given. *See id.* at 485 (Garza, J. dissenting) (citing relevant case law). However, a state official does not act under "color of state law" when he acts in the complete absence of any authority. *Id.; see Monroe v. Pape,* 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961) (searches of homes); *Fee v. Herndon,* 900 F.2d 804 (5th Cir.) (classroom discipline), *cert. denied*, 498 U.S. 908, 111 S. Ct. 279, 112 L. Ed. 2d 233 (1990); *see also Barney v. City of New York,* 193 U.S. 430, 433-38, 24 S. Ct. 502, 503, 48 L. Ed. 737 (1904) (holding that

-32-

there is no state action when the offending act was not authorized by the state and was forbidden by the state legislature).

The Supreme Court has employed different standards for determining state action, but has emphasized that it is necessarily a fact intensive inquiry. *Lugar,* 457 U.S. at 939, 102 S. Ct. at 2755. In determining state action and color of state law in the context of public schools, federal courts have focused on whether there was a "real nexus" between the school employee's duties and obligations to the school and the activity out of which the violation occurs. *Rains,* 66 F.3d at 1406-07; *Taylor,* 15 F.3d at 452 n.4; *D.T. by M.T. v. Indep. Sch. Dist. No. 16,* 894 F.2d 1176, 1188 (10th Cir.), *cert. denied*, 498 U.S. 879, 111 S. Ct. 213, 112 L. Ed. 2d 172 (1990). It is a far leap from the school teacher in *Taylor,* who used his position and authority as a teacher to sexually abuse a student, to a custodian who, lacking any authority over the students, commits an atrocious crime on the school premises. In *Taylor,* the school district established the relationship between the teacher and the student which the teacher used to coerce the *Taylor* Doe into having sexual relations with him. *See Taylor,* 15 F.3d at 452 n.4 (describing ways in which teacher/coach used his position to effectuate the sexual assault); *id.* at 461-62 (Higginbotham, J., concurring) (explaining why the teacher's actions were under color of state law). In this case, the school district did not establish a relationship between the custodian and Jane Doe which he was able to use to sexually assault

-33-

her. The school district neither placed the custodian in a position of authority over Doe, nor did the district grant him any official influence over her that he could use to coerce her into having sexual relations with him. In raping Jane Doe, the custodian committed an act of violence which was completely outside the scope of any authority he may have held in his position as a custodian at the school. Despite the fact that the custodian may have been legitimately on the school premises, nothing about the crime that he committed bore any relation to his status as a state employee.

If the custodian's actions constitute state action, then every intentional tort or criminal act committed by a state official or employee could result in a constitutional violation, actionable under § 1983. The Supreme Court has rejected this approach. *See Parratt v. Taylor,* 451 U.S. 527, 544, 101 S. Ct. 1908, 1917, 68 L. Ed. 2d 420 (1981) (concluding that the drafters of the Fourteenth Amendment did not intend the Amendment to be "'a font of tort law to be superimposed upon whatever systems may already be administered by the States'") (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S. Ct. 1155, 1160, 47 L. Ed. 2d 405 (1976)); *Baker v. McCollan,* 443 U.S. 137, 146, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."). By shifting the focus from the individual state actor to the supervisory officials, the majority

has made the school officials liable for private conduct that proximately results from the officials' actions. The Supreme Court has also rejected this approach. *See DeShaney,* 489 U.S. at 197, 109 S. Ct. at 1004, 103 L. Ed. 2d 249 (stating that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause").

Because the actions of the custodian in this case fall completely outside of the scope of his employment with the school district, and are proscribed by the state of Texas, I would hold that the custodian was not a state actor when he raped Doe. Therefore, Doe has not alleged a constitutional violation, and the defendants are entitled to qualified immunity.[52]

---

For the foregoing reasons, I would also dissent from the majority's opinion in Part II. C holding that Doe's amended complaint meets the heightened pleading requirement of *Elliott v. Perez,* 751 F.2d 1472 (5th Cir. 1985). The complaint states that the custodian was a state actor because he was a school employee and because he was able to accomplish the assault solely because of the actions and omissions of the School Officials. This does not constitute "detailed facts supporting the contention that the plea of immunity cannot be sustained." *Id.* at 1482. I would therefore hold that Doe also failed to satisfy the heightened pleading requirement, and thus that her complaint should be dismissed.