Clay Daniel **BOONE** and Carlton David **Boone, Plaintiffs,**

v.

**CITY OF BURLESON, Defendant.**

**Civil Action No. 396–CV–1479–G.**

United States District Court, N.D. Texas, Dallas Division.

April 11, 1997.

---

James Ray Claunch, Fort Worth, TX, James E. Ferguson, Ferguson & Claunch, Cleburne, TX, for plaintiffs.

Joe Carroll Tooley, Kent Donovan Williamson, Thomas Richard Stauch, McCauley Macdonald & Devin, Dallas, TX, for defendant.

## *MEMORANDUM ORDER*

FISH, District Judge.

Before the court are the motions of defendant City of Burleson (the "City") (1) for dismissal, under F.R. Civ. P. 12(b)(6), of the claims of plaintiffs Clay Daniel Boone and Canton David Boone against it and (2) for summary judgment. For the following reasons, the City's motion for summary judgment is granted, and its motion to dismiss is denied as moot.

## I. *BACKGROUND*

Near midnight on October 8, 1994, Carlton David Boone was driving a vehicle within the corporate limits of the City. Clay Daniel Boone was a passenger in the vehicle. Plaintiffs' First Amended Complaint ¶ 4 ("Complaint"). Officer Johnny Schumacher ("Schumacher"), a City police officer, stopped the vehicle for suspicion of driving while intoxicated. *Id.;* Defendant's Motion for Summary Judgment ("Motion") ¶ 1; Motion, Exhibit 1, Affidavit of Officer Schumacher ("Schumacher Affidavit") at 2. Schumacher ordered Carlton David Boone out of the vehicle. Complaint ¶ 7. After conducting a field sobriety test on him, Schumacher determined that probable cause existed to arrest Canton David Boone. Motion ¶ 1; Schumacher Affidavit at 2. Schumacher then ordered him to stand behind the vehicle until a backup officer arrived on the scene. *Id.*

City Officer Sherman ("Sherman") arrived and ordered Clay Daniel Boone to exit the vehicle and identify himself. Complaint ¶¶ 8, 9; Motion ¶ 2; Schumacher Affidavit at 2. He refused both requests. Complaint ¶ 10; Motion ¶ 2. Sherman then attempted to remove Clay Daniel Boone from the vehicle. Complaint ¶ 1 1; Motion ¶ 2. Clay Daniel Boone physically resisted, and an altercation ensued. Motion ¶ 2; Schumacher Affidavit at 2. Schumacher ordered Canton David Boone to stay behind the vehicle and then proceeded to aid Sherman. Complaint ¶¶ 12, 13; Motion ¶ 2; Schumacher Affidavit at 2. Schumacher informed Clay Daniel Boone that he was under arrest for public intoxication and ordered him to stop resisting arrest. Motion

¶ 2; Schumacher Affidavit at 2. Clay Daniel Boone then exited the vehicle and began fighting with the two officers. *Id.* The plaintiffs contend that the officers kicked and hit Clay Daniel Boone during the struggle, behavior which they characterize as "excessive force." Complaint ¶ 14. The City claims that "[t]he officers repeatedly told Clay Daniel Boone that he was under arrest as they tried to handcuff him." Motion ¶ 2.

During the altercation, Carlton David Boone left the rear of the vehicle. Complaint ¶ 15; Motion ¶ 3; Schumacher Affidavit at 2. Schumacher ordered Canton David Boone to return to the back of the vehicle. Schumacher Affidavit at 2. The plaintiffs claim that Canton David Boone "placed his hands over his head and took two ... steps toward Officer Shumacher [sic] and Officer Sherman and requested that they stop beating and kicking his brother." Complaint ¶ 15. The City contends that after Carlton David Boone left the rear of the vehicle, he began to struggle with Schumacher. Motion ¶ 3. Schumacher maintains that after warning him to return to the back of the vehicle, "Canton David Boone failed to obey my verbal commands and approached me bringing his hands towards my neck." Schumacher Affidavit at 2–3. Schumacher then handcuffed Carlton David Boone after a brief struggle. Complaint ¶ 16; Motion ¶ 3; Schumacher Affidavit at 3. Plaintiffs claim that after Schumacher handcuffed him, the officer kicked Carlton David Boone's legs out from under him, causing him to strike his head on the pavement and rendering him semi-conscious. Complaint ¶ 17. As a result of this fall, Canton David Boone suffered a cut nose, a bruised face, and sore knees. *Id.* ¶ 18.

More City police officers then arrived on the scene, *id.* ¶ 19; Motion ¶ 3, after which Clay Daniel Boone was handcuffed. Motion ¶ 3. Plaintiffs contend that "[t]he Burleson Police Officers continued to beat and kick Canton David Boone and Clay Daniel Boone after they were in custody, and unable to resist the police." Complaint ¶ 20. As a result of these beatings, the plaintiffs maintain, they "suffered cuts, abrasions, and contusions[,] both were unable to work for several weeks [, and] [n]either ... were taken to the hospital for medical attention." *Id.* ¶¶ 21, 22.

On April 19, 1996, the plaintiffs filed their original petition in the 18th Judicial District Court of Johnson County, Texas. *See* Notice of Removal, Exhibit A, Plaintiffs' Original Petition. On May 24, 1996, the City removed the case to this court, answered the plaintiffs' complaint, and filed a counterclaim for costs on the ground that the plaintiffs' suit is frivolous. On January 30, 1997, the plaintiffs filed an amended complaint, and on February 10, 1997, the City answered that complaint, again asserting its counterclaim.

On the basis of the foregoing allegations, the plaintiffs contend that the City is liable for the officers' conduct because it engaged in a policy or custom of failing to adequately train its police officers, thereby allowing the officers to use excessive force. Complaint ¶¶ 25–29, 31. As a result, the plaintiffs allege, the City (1) violated the plaintiffs' rights under 42 U.S.C. § 1983 (" § 1983") and (2) committed intentional and negligent torts under Texas common law. *Id.* ¶¶ 30–33.

## II. *ANALYSIS*

### A. *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A movant for summary judgment makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the nonmovants' case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The plead-

ings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c),

Once the movant makes this showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmovants must present evidence sufficient to support a resolution of the factual issue in their favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15.

While all of the evidence must be viewed in a light most favorable to the plaintiffs as the motion's opponents, *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (*citing Adickes v. S.H. Kress & Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)), summary judgment is properly entered against them if after adequate time for discovery, they fail to establish the existence of an element essential to their case and as to which they will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### B. *Claims Under § 1983*

To state a valid claim against the City under § 1983, the plaintiffs must identify "(1) a policy (2) of the city's policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of constitutional right." *Palmer v. City of San Antonio, Texas,* 810 F.2d 514, 516 (5th Cir.1987) (quoting *Grandstaff v. City of Borger, Texas,* 767 F.2d 161, 169 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987)).

■ A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights; a city cannot be liable under § 1983, however, merely because it employed a tortfeasor. *Monell v. Department of Social Services of City of New York,*

436 U.S. 658, 691, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir. 1995). According to the Supreme Court, "[t]he 'official policy' requirement . . . make[s] [it] clear that municipality liability [under § 1983] is limited to action for which the municipality is actually responsible . . .— that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). The policy or custom must be "the moving force of the constitutional violation." *Palmer,* 810 F.2d at 516 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38). Although the plaintiffs have identified no official written policy regarding their § 1983 claim, such a policy may nevertheless exist in the form of an unwritten custom. The custom or policy must actually be that of the City's governing body before the City can be held liable. See *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

■ A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority. *Worsham v. City of Pasadena,* 881 F.2d 1336, 1339–40 (5th Cir.1989) (citations omitted); *see also Palmer,* 810 F.2d at 516. "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (quoting *Pembaur,* 475 U.S. at 483–84, 106 S.Ct. at 1299–1301).

The Fifth Circuit defines official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so

common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.) (per curiam), *aff'd in relevant part*, 739 F.2d 993 (5th Cir.1984) (en banc); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992) (citing *Bennett*, 735 F.2d at 862).

■ The plaintiffs contend that the City is liable for the officers' conduct because it engaged in a policy or custom of failing to adequately train its police officers, which led to the officers' use of excessive force against the plaintiffs. Plaintiffs have not adduced any evidence, however, that the City deliberately chose an inadequate training program. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ("[I]t is ... difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate."); see also *Harris*, 489 U.S. at 388, 109 S.Ct. at 1204 ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); *Palmer*, 810 F.2d at 516. Nor is there evidence of persistent, repeated, and constant violations of constitutional rights by virtue of this alleged failure to train. See *Wassum v. City of Bellaire, Texas*, 861 F.2d 453, 455 (5th Cir. 1988) (quoting *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984)).

To the extent that the plaintiffs attempt to hold the City liable for acts of the alleged excessive force by its police officers and for denial of adequate medical care, the court concludes that the plaintiffs have not adduced evidence that would allow a reasonable factfinder to find that the City had a deliberate policy or custom to do either of these things. The plaintiffs have failed, moreover, to produce any evidence of persistent, repeated, and constant violations.

Accordingly, because the plaintiffs have failed to direct the court's attention to evidence in the record showing that the City engaged in a policy or custom of failing to adequately train its officers, an issue on which they will have the burden of proof at trial, the City's motion for summary judgment on the plaintiffs' § 1983 claims is granted.

### C. State Law Claims

■ The City argues that, as a state governmental entity, it is immune from state law tort claims. Defendant's Brief in Support of Motion for Summary Judgment at 6–7. Under Texas law, "the state and its subdivisions, as sovereigns are immune from suit without consent even though there is no dispute regarding the state's liability." *Couch v. Ector County*, 860 S.W.2d 659, 661 (Tex. App.—El Paso 1993, no writ). Local governmental entities like the City "perform only governmental functions and are immune from tort suits unless their immunity has been waived by statute." *Garcia v. Maverick County*, 850 S.W.2d 626, 628 (Tex.App.—San Antonio 1993, writ denied). Governmental immunity has not been waived for intentional torts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (Vernon 1986); see also *Hawsey v. Louisiana Department of Social Services*, 934 S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1996, writ denied).

■ Under the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. § 101.001 *et seq.* (Vernon 1986), local government entities such as the City can be held liable in negligence only for (1) property damage, personal injury, and death arising from the operation or use of a motor-driven vehicle or equipment and (2) personal injury and death caused by a condition or use of tangible personal or real property. *Mar-*

*tinez v. Hardy,* 864 S.W.2d 767, 772 (Tex. App.—Houston [14th Dist.] 1993, no writ) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.021). Neither of these exceptions to sovereign immunity applies in this case. See *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 122 (Tex.App.—Houston [1st Dist.] 1995, no writ). Therefore, all of the plaintiffs' claims for damages against the City under state law are dismissed.

### III. *CONCLUSION*

For the reasons stated, summary judgment in favor of the City is GRANTED on all claims asserted by the plaintiffs. The City's motion to dismiss is DENIED as moot. The City's counterclaim is DENIED. *See Hughes v. Rowe,* 449 U.S. 5, 14–16, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980) (even though state prisoner's claims under 42 U.S.C. § 1983 were properly dismissed for failure to state a claim, his allegations—which deserved and received careful consideration by the lower courts—were not meritless, and award of attorney fees to defendants under 42 U.S.C. § 1988 was therefore inappropriate).

SO ORDERED.